RONALD A. X. STOKES *vs.* SUPERINTENDENT, MASSACHUSETTS CORRECTIONAL INSTITUTION, WALPOLE.

Middlesex. April 6, 1983. — August 15, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Imprisonment. Habeas Corpus. Practice, Civil,* Moot case.

Where a prisoner's petition for a writ of habeas corpus eventuated in a judgment affording him relief essentially declaratory and injunctive in nature, the superintendent of the institution in which he was confined could properly appeal the judgment. [885-886]

A proceeding by a prisoner seeking relief from a correctional institution's "Departmental Segregation Unit" was to be dismissed as moot. [886-887]

CIVIL ACTION commenced in the Superior Court Department on July 22, 1981.

The case was heard by *Mitchell,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*William D. Luzier, Jr.,* Assistant Attorney General, for the defendant.

*Nonnie S. Burnes (Thomas D. Griffith* with her) for the plaintiff.

NOLAN, J. A judge of the Superior Court ordered the Superintendent of the Massachusetts Correctional Institution at Walpole (MCI, Walpole) to release Stokes from the Departmental Segregation Unit (DSU) at MCI, Walpole, because the superintendent did not provide Stokes a status review hearing within ninety days after he was transferred to the DSU. The superintendent appealed. We granted the superintendent's application for direct appellate review. Because we conclude that the case is moot, we vacate the order and remand the case to the Superior Court for dismissal.

Stokes is currently serving concurrent MCI, Walpole, sentences of twelve to twenty-five years, and nine to ten

years for the crimes of unarmed robbery and kidnapping, respectively. In November, 1980, Stokes was confined to the DSU at MCI, Walpole, as a result of an incident arising out of his refusal to be handcuffed by correctional officers and court officers assigned to Middlesex County Courthouse. On December 31, 1980, Stokes was transferred to Bridgewater State Hospital for psychological evaluation. On February 26, 1981, the evaluation was completed, and Stokes was found not to be suffering from any mental illness. On the same day he was transferred to MCI, Concord, and placed in "awaiting action status."[1] While in MCI, Concord, Stokes petitioned the Superior Court to order the superintendent of MCI, Concord, to hold a status review hearing.[2] On or about March 30, 1981, a judge of the Superior Court granted Stokes' request for a hearing.[3] As a result, a specifically-convened Department Segregation Unit Review Board (board) on April 13, 1981, unanimously recommended that Stokes be placed in the DSU at MCI, Walpole, with a review of his status to be held within ninety days.[4]

---

[1] See 103 Code Mass. Regs. § 430.19 (1) (c) (1978) (superintendent or designee may place inmate in detention in "awaiting action status" pending transfer to another custody status).

[2] See 103 Code Mass. Regs. § 420.13 (2) (1978).

[3] The superintendent did not appeal this order.

[4] The record is unclear as to when Stokes was "transferred" to the DSU in MCI, Walpole. We note that he was transferred there in November, 1980, but we conclude that as of April 13, 1981 (when the first board hearing was held), he was not incarcerated in the DSU. However, although Stokes, at the hearing in the Superior Court in July, 1981, indicated that he was "transferred" to the DSU on May 1, 1981, the superintendent, for reasons which we cannot discern, apparently concedes that Stokes was "transferred" to DSU on April 13, 1981, the date of the first board hearing. Given the ninety-day provisions of the Commissioner's regulations, the dates are, of course, crucial. On the basis of the superintendent's concession, however, we conclude that the operative date is April 13, 1981, which is manifestly more favorable to Stokes' position. Thus, the ninety-day period expired on July 12, 1981. See 103 Code Mass. Regs. § 421.07 (1) (1978) (a resident may be transferred to DSU after findings *by the Commissioner of Correction*); *id.* at § 421.07 (2) (no transfer to DSU in absence of findings *by Commissioner*); *id.* at § 421.08

On April 29, 1981, at the request of the Commissioner of Correction (Commissioner) for additional information concerning Stokes, a special conference was held at MCI, Concord, to discuss Stokes' psychiatric problems and his antisocial behavior. The conferees concluded that there was nothing psychiatrically preventing Stokes from behaving in accordance with prison rules. On May 1, 1981, the Commissioner approved the board's placement recommendation, and correctional officers immediately transferred Stokes to the DSU at MCI, Walpole.

Prior to July 12, 1981, Stokes requested a status review hearing, but no such hearing was held. On July 22, 1981, Stokes filed pro se a petition for a writ of habeas corpus in the Superior Court, citing as the ground for his release from the DSU, the superintendent's failure to follow the ninety-day review provisions of the regulations for the Department of Correction. On July 23, 1981, the board held a status review hearing and apparently concluded that Stokes should remain in the DSU.[5] On July 28, 1981, a hearing was held before a judge of the Superior Court, and the judge ordered the superintendent to release Stokes from the DSU.

1. *Superintendent's right to appeal.* "The long standing rule of the Commonwealth is that exceptions do not lie from an issuance of the writ of habeas corpus." *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole,* 376 Mass. 659, 664 (1978), citing *Wyeth* v. *Richardson,* 10 Gray 240, 241 (1857). See *Chambers's Case,* 221 Mass. 178, 179 (1915). Stokes argues that, under this rule, the instant appeal is improper. The superintendent argues that the adoption of Mass.R.Crim.P. 30(a), 378 Mass. 900 (1979), im-

---

(1) (department's review board and *Commissioner* shall review status of resident *transferred* to DSU).

Finally, we note that the board's recommendation on April 13, 1981, states that review was to be held within ninety days (it does not say within ninety days of what). Although the superintendent may have relied on this in his concession, we can only conclude that such reliance was unwarranted given the above-mentioned regulations.

[5] We infer from the record that, at the time of the hearing before the judge, Stokes was still in the DSU.

plicitly overruled *Wyeth* v. *Richardson, supra,* or, alternatively, that Stokes sought and, in effect, obtained declaratory and injunctive relief. The logical result of either of these arguments, the superintendent concludes, is that the instant appeal is proper.

We conclude that Stokes, similar to the prisoners in *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole, supra,* and *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham,* 386 Mass. 848 (1982), failed to state a claim for a writ of habeas corpus. The essence of a writ of habeas corpus is the immediate release of a party deprived of his personal liberty. *Wyeth* v. *Richardson, supra.* G. L. c. 248, §§ 1 & 25. Here, Stokes claimed that the superintendent did not provide him a status review hearing to which he was entitled pursuant to the Commissioner's regulations. With this argument the judge agreed and ordered that Stokes be released from the DSU. It cannot be (and was not) contended, however, that as a result of this order, Stokes was entitled to be released from incarceration at MCI, Walpole. At the time that his habeas corpus petition was heard, Stokes, therefore, was not eligible for immediate release from the superintendent's custody. Thus, the relief granted by the judge was essentially declaratory and injunctive in nature. Accordingly, the superintendent could properly appeal therefrom. See G. L. c. 231A, §§ 1, 2, & 4.

2. *Mootness.* On July 22, 1981, Stokes commenced the instant action, alleging that he should be released from the DSU because the superintendent failed to provide him a status review hearing within ninety days of his transfer to the segregated unit. On July 23, 1981, the status review hearing was held. The superintendent argues that because the hearing was held on the twenty-third, the case was moot at the time the judge decided the case.

"Ordinarily, litigation is considered moot when the party who claimed to be aggrieved ceases to have a personal stake in its outcome." *Blake* v. *Massachusetts Parole Bd.,* 369 Mass. 701, 703 (1976). In the case before us, Stokes would

seem no longer to have a personal stake in the outcome. However, he argues that this is a question of some significance, "capable of repetition, yet evading review" and is, therefore, excepted from the canon of mootness. See *Brach* v. *Chief Justice of the Dist. Court Dept.*, 386 Mass. 528, 533 (1982); *Diafario* v. *Commissioner of Correction*, 371 Mass. 545, 552-553 (1976); *Wolf* v. *Commissioner of Pub. Welfare*, 367 Mass. 293, 298-299 (1975). We see no strong likelihood that the same dispute will recur between the same parties.[6] See *Blake* v. *Massachusetts Parole Bd.*, *supra* at 707; *Reilly* v. *School Comm. of Boston*, 362 Mass. 689, 694-695 (1972).

Thus, we conclude that the case is moot. Accordingly, we vacate the order from which the appeal was taken with a notation that the decision is not on the merits, and that the Commissioner should bend every effort to conform to the time limitations in the regulation. We remand the case to the Superior Court with instructions to dismiss Stokes' action as moot.

*So ordered.*

---

[6] We noted, *supra*, that the board held a hearing on July 23, 1981. We infer from the record that the board concluded that Stokes should remain in the DSU, subject to timely review.