## Commonwealth *vs.* Stephen Szargowicz.

No. 08-P-1509.

Plymouth. January 11, 2010. - August 27, 2010.

Present: McHugh, Green, & Fecteau, JJ.

*Sex Offender. Practice, Criminal,* Plea, Postconviction relief, Presumptions and burden of proof, Sentence.

A trial court judge erred in denying a motion for a declaratory judgment brought by a criminal defendant seeking to terminate his commitment as a sexually dangerous person on the ground that he had not, in fact, entered a guilty plea to the charge of indecent assault and battery that provided the sole basis for his commitment, where the motion was a valid mechanism for challenging the outstanding commitment order that continued to confine the defendant to a treatment center for sexually dangerous persons after the expiration of the related criminal sentence [502-503]; therefore, this court remanded the matter for a factual inquiry into the issue whether the defendant actually pleaded guilty to the charge at issue [503-505].

Indictment found and returned in the Superior Court Department on March 2, 1983.

A motion to vacate commitment as a sexually dangerous person, filed on January 13, 2006, was considered by *Linda E. Giles*, J.

*Edward E. Eliot*, Committee for Public Counsel Services, for the defendant.

*Christine M. Kiggen*, Assistant District Attorney, for the Commonwealth.

McHugh, J. In 1983, the defendant, Stephen Szargowicz, was committed to Bridgewater Treatment Center (treatment center) as a sexually dangerous person, ostensibly on the basis of his plea of guilty to a charge of indecent assault and battery. In 2006, he filed a motion to vacate his commitment on grounds that he had not, in fact, entered a guilty plea to the relevant charge. A judge of the Superior Court denied the motion and,

later, denied what she deemed to be a motion for reconsideration. On this appeal, the defendant argues that he never pleaded guilty and that, as a consequence, his commitment should be terminated.

*Background.* The basic facts are these. On September 28, 1982, indictments were returned against the defendant charging him with kidnapping, aggravated rape, assault and battery by means of a dangerous weapon, and assault and battery. All charges arose out of an incident that occurred in July, 1982. The defendant pleaded guilty to all four charges in Superior Court on March 3, 1983, and on May 20, 1983, was sentenced to concurrent five- to ten-year terms in State prison for kidnapping and aggravated rape and to a concurrent term of from three to five years for assault and battery by means of a dangerous weapon. The assault and battery conviction was placed on file.[1]

On March 2, 1983, the day before he pleaded guilty to the four offenses just described, a different grand jury returned an indictment against the defendant for indecent assault and battery arising from the same incident. The central question on this appeal is whether he pleaded guilty to that offense, along with the other four, on March 3, 1983, because that conviction is the sole basis for his commitment to the treatment center.[2] After the proceedings on March 3, the judge ordered the defendant committed to the treatment center for a sixty-day period of evalua-

---

[1] Before pleading guilty, the defendant was free on bail. While free, he committed a similar offense for which he was tried and convicted in 1984. For that crime, he received a lengthy "from and after sentence" which he is still serving.

[2] The version of G. L. c. 123A, § 5, in effect in 1983 allowed the court to commit a person to the treatment center "in lieu of the sentence required by law for the original offence," upon a finding that the individual is a sexually dangerous person and "a determination of guilt of the original offence." G. L. c. 123A, § 5, as appearing in St. 1958, c. 646, § 1. Under that version of the statute, the court could not impose both a criminal sentence and a civil commitment for the same conviction. Accordingly, the court's imposition of a sentence to State prison for aggravated rape meant that the defendant's aggravated rape conviction could not be used as the basis for committing him to the treatment center. The assistant district attorney prosecuting the case was aware of the statute's terms and told the grand jurors who returned the March 2 indictment that he would be seeking a State prison sentence on the aggravated rape charge the earlier grand jury had returned and would use the indecent assault and battery charge he was asking them to return to obtain a commitment to the treatment center.

tion for sexual dangerousness. Later, after a hearing, the judge found the defendant to be a sexually dangerous person as defined by G. L. c. 123A, § 1, and ordered him committed to the treatment center for a term of not less than one day and not more than his natural life.[3]

Twenty-two years later, on January 13, 2006, the defendant filed a pro se motion seeking, in effect, to vacate the order committing him to the treatment center on the ground that he had not pleaded guilty to the indecent assault and battery charge and that the docket so reflected. A Superior Court judge denied the motion, finding that the docket entry for March 3, 1983, originally read "Pleads not guilty" but the word "not" had been struck through in handwriting next to which, also in handwriting, appeared the notation "per D.L." In her memorandum of decision, the judge stated that

> "[u]pon information and belief, 'D.L.' stands for then Assistant Clerk David Leavitt, now deceased. Thus, it is apparent from all the surrounding circumstances that the defendant pled guilty to all five indictments on March 3, 1983, and that the phrase 'Pleads not guilty' on the docket sheet for [the indictment charging indecent assault and battery] was a typographical error properly corrected by the clerk."

The motion judge stated that the docket she reviewed was the "official docket" for the relevant indictment, but her memorandum contains no findings underlying that conclusion.[4]

On February 15, 2008, the defendant, now represented by counsel, filed a motion for a "declaratory judgment" seeking to terminate the commitment. Construing that motion as a motion for reconsideration, the same judge denied it, without amplification, on August 5, 2008. This appeal followed.

*Discussion.* The problem with which we are faced begins with the fact that the judge who took the March 3, 1983, pleas

---

[3]In June, 1983, the defendant filed a pro se motion to withdraw a guilty plea and a second motion to appoint new counsel for all five charges. The motions were denied without a hearing for reasons unrelated to the issues the present appeal involves.

[4]At oral argument, counsel for the defendant stated that the docket reviewed by the motion judge was actually a docket worksheet, not the official docket.

retired before the motions at issue were filed.[5] In addition, there apparently is no transcript of the plea colloquy, and the court reporter, who also retired before the motions were filed, has no papers related to the proceedings. Compounding those problems is that the record on appeal contains at least three different versions of what purports to be the Superior Court docket sheet relating to the indecent assault and battery charge.[6] One version, which the Commonwealth asserts is the "official docket" obtained from Superior Court officials, contains the phrase "pleads guilty" next to the date March 3.[7] A second version, already described, contains the phrase "Pleads not guilty" with the handwritten interlineation through the word "not." A third version, which defense counsel claims is the "official docket" he obtained from Superior Court officials, contains the entry "Pleads not guilty" with no interlineation. The first version bears an attestation stating that it is "a true copy" beneath which is an indecipherable signature over the words "Clerk of Courts." The third version bears the same attestation beneath which is the signature "Francis R. Powers" above the word "Clerk." The second version, with the handwritten interlineation, bears no attestation. The first and the third versions each state that they are a "duplicate," but they manifestly are not photocopies of the same document, and the format of the information contained on all three versions differs in many respects, although the difference between the "guilty" and "not guilty" entries appears to be the only difference of substance.[8]

Other documents in the record likewise point in different directions. The mittimus says that the defendant pleaded guilty to indecent assault and battery. However, a treatment center document entitled "Absence from the Institution" dated May

---

[5]We take judicial notice that the judge subsequently died.

[6]Because of the manner in which the parties have dealt with the record, it is difficult to determine which versions were presented to the motion judge.

[7]The defendant claims that this docket sheet was not presented to the motion judge and therefore is not part of the official record.

[8]Through a motion to expand the record, which we deny, defense counsel submitted two additional docket sheets he says he obtained from legal papers at the treatment center. Those sheets clearly were not before the motion judge, but the defendant may seek their introduction in any subsequent hearing in the Superior Court.

20, 1983, lists other charges with corresponding sentences but lists "indecent assault" as "filed." A second treatment center document which purports to list all the defendant's convictions makes no mention of a conviction for indecent assault and battery but does list the defendant as an "SDP," followed by the docket number attached to the indecent assault and battery indictment. A Department of Correction document entitled "Inmate Sentence Listing" likewise omits any mention of a conviction of indecent assault and battery, although that document seems designed to facilitate calculation of a release date as to which the indecent assault and battery conviction would play no role. Finally, a document prepared by the treatment center legal office entitled "Certified Copies of Convictions" indicates pleas of not guilty that were changed to guilty pleas for all relevant indictments except the indictment charging indecent assault and battery, as to which, according to the document, the defendant "Pleads Not Guilty."[9]

Against that backdrop, the Commonwealth argues that the defendant waived his claim that he never pleaded guilty to indecent assault and battery by failing to raise that claim in his 1983 motion to withdraw his pleas, see note 3, *supra*, and by then waiting some twenty-two years before first advancing the present claim. In support of its position, the Commonwealth relies on a number of cases that stress the importance of finality in the criminal process and the need for timely assertion of new trial motions and other motions for postconviction relief. See, e.g., *Commonwealth* v. *Curtis*, 417 Mass. 619, 634 (1994); *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 565 (1994).

The problem with the Commonwealth's argument is that the defendant is not making a motion for a new trial or other postconviction relief. Instead, he claims that no conviction ever existed. Without a conviction, there is no basis for his confinement to the treatment center.[10]

If the order of confinement to the treatment center were pres-

---

[9]The record does not contain any records maintained by the Probation Department.

[10]See note 2, *supra*. Under the version of G. L. c. 123A, § 6, that existed in 1983, the superintendent of an institution where the defendant was confined could have petitioned for his commitment as a sexually dangerous person even if a commitment order had not issued after his conviction of indecent

ently restraining the defendant's liberty, then a petition for a writ of habeas corpus would be an appropriate mechanism for challenging the legality of that order on grounds that the foundational requirement for its issuance, i.e., a conviction, did not exist. See, e.g., *Andrews, petitioner*, 368 Mass. 468, 470 (1975); *Dutil, petitioner*, 437 Mass. 9, 13 (2002); *Cline, petitioner*, 16 Mass. App. Ct. 958 (1983). See generally *Sheriff of Suffolk County* v. *Pires*, 438 Mass. 96, 97-98 (2002).[11] But a criminal sentence, not the commitment order, is the present cause of the defendant's confinement, so even if the commitment order is invalid, as the defendant claims it is, the writ is not now available to him. See *id.* at 100 (writ "is available only where [its issuance] would result in the petitioner's immediate release from custody"). Under those circumstances, the defendant's motion for a declaratory judgment was not simply a misnomered motion for reconsideration of the judge's earlier denial of his motion to vacate, but was instead a valid mechanism for challenging the outstanding order that will confine him to the treatment center after his criminal sentences expire. See *Pina* v. *Superintendent, Massachusetts Correctional Inst., Walpole*, 376 Mass. 659, 665-666 (1978); *Hennessy* v. *Superintendent, Massachusetts Correctional Inst., Framingham*, 386 Mass. 848, 850-851 (1982).

We think that the uncertainty reflected on the present record regarding whether the defendant actually pleaded guilty to indecent assault and battery on March 3, 1983, requires a factual inquiry into the proceedings that took place that day.[12] In that

---

assault and battery and he had received a prison term for all convictions. But possibilities cannot rewrite history, and as events actually unfolded, the indecent assault and battery conviction was essential to a valid order committing the defendant to the treatment center.

[11] The writ's reach is limited, and it is not an alternative means for "inquir[y] into the merits of a judgment under which a party is committed." *Sheriff of Suffolk County* v. *Pires, supra* at 99, quoting from *Clarke's Case*, 12 Cush. 320, 321 (1853). See *O'Leary, petitioner*, 325 Mass. 179, 184 (1950) (habeas corpus is not available "in a case which was within the jurisdiction of the court, and where the only question raised is the correctness of the rulings of the court").

[12] We offer no view on the ultimate consequences of a finding or conclusion that the defendant did not plead guilty. See generally *Commonwealth* v. *Bruno*, 432 Mass. 489, 497-502 (2000); *Commonwealth* v. *Allen*, 73 Mass. App. Ct. 862, 864 (2009).

504      77 Mass. App. Ct. 498 (2010)

Commonwealth *v.* Szargowicz.

regard, although a defendant has the burden of proving that he is entitled to release from a confinement that was valid at the outset, see, e.g., *Averett, petitioner,* 404 Mass. 28, 32 (1989) ("[I]ndividuals who establish that their lawfully imposed sentences have expired may petition for habeas corpus relief"), the Commonwealth bears the burden of proving the existence of a valid confinement order. See, e.g., *Baker, petitioner,* 310 Mass. 724, 732 (1942). Particularly is that so in a case like this one where the confinement order flows from a guilty plea. If "[t]he burden is on the Commonwealth to show that a challenged guilty plea was understandingly and voluntarily made," *Commonwealth* v. *Duquette,* 386 Mass. 834, 841 (1982), it necessarily follows that the burden is on the Commonwealth to show that there was a plea.

We recognize the Supreme Judicial Court's holding that a defendant who challenges "a prior conviction by guilty plea" long after records affecting the plea have been destroyed bears the burden of presenting "sufficient credible and reliable evidence to rebut a presumption that the prior conviction was valid." *Commonwealth* v. *Lopez,* 426 Mass. 657, 665 (1998). We think, though, that *Lopez* does not control this case. First of all, *Lopez* was a case in which the defendant acknowledged that he had pleaded guilty but alleged that he had done so involuntarily. *Id.* at 659. Here, the defendant claims that he made no plea at all. Moreover, the Supreme Judicial Court recently noted that *Lopez* "applied a presumption of regularity only to motions to vacate guilty pleas brought under rule 30(b)." *Commonwealth* v. *Grannum,* 457 Mass. 128, 133 (2010). This case does not involve a motion under Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). Finally, while the presumption of regularity may play a role in determining what happened at the 1983 plea colloquy, see *Commonwealth* v. *Hoyle,* 67 Mass. App. Ct. 10, 14-15 (2006), some explanation of the apparent disarray in the official records will be necessary if that presumption is to operate with its customary force.[13]

---

[13]By the same token, the length of time the defendant waited to raise his claim and motion he made in 1983 to withdraw a guilty plea he now claims never existed, see note 3, *supra,* are entitled to evidentiary weight in any hearing that occurs hereafter. See generally *Commonwealth* v. *Quinones,* 414 Mass. 423, 431-435 (1993); *Commonwealth* v. *Lopez,* 426 Mass. at 661-662.

The order denying the motion for declaratory relief is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*