APPEALS COURT 
 
 EDWARD PIERCE, petitioner

 
 Docket:
 23-P-931
 
 
 Dates:
 September 6, 2024 - January 13, 2025
 
 
 Present:
 Sacks, Englander, & Grant, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Habeas Corpus. Practice, Civil, Civil commitment, Sex offender, Appeal, Dismissal of appeal. Sex Offender. Evidence, Opinion, Sex offender
 
 

             Petition for a writ of habeas corpus filed in the Superior Court Department on February 16, 2023. 
            The case was heard by Michael A. Cahillane, J. 
            Mary P. Murray for the respondent.
            Joseph M. Kenneally for the petitioner.
            SACKS, J.  After a Superior Court judge allowed his 2023 petition for a writ of habeas corpus, Edward Pierce was released from the custody of the Massachusetts Treatment Center for sexually dangerous persons (MTC), to which he had been civilly committed in 2002.  The judge allowed the petition on the ground that the evidence at Pierce's 2002 commitment proceeding failed to include the opinion of a qualified examiner that Pierce was a sexually dangerous person (SDP) -- a requirement imposed by G. L. c. 123A, as interpreted in Johnstone, petitioner, 453 Mass. 544, 553 (2009) (Johnstone).  The respondent superintendent of the MTC (superintendent) now appeals, asserting that habeas corpus relief was unavailable because Pierce could have raised this argument in a direct appeal from the 2002 commitment.  See Sheriff of Suffolk County v. Pires, 438 Mass. 96, 99-100 (2002) (Pires) (habeas corpus not substitute for ordinary appellate procedure).
            Shortly before oral argument, we asked the parties to address the additional, threshold question whether an order granting habeas corpus relief is appealable.  For the reasons that follow, we conclude that (1) the appeal of the habeas corpus order at issue is properly before us, and (2) because Pierce could have raised his claim in a direct appeal from his 2002 commitment, he cannot raise that claim through a habeas corpus petition.  We therefore reverse the order granting the petition.
            Background.  1.  Prior criminal and civil commitment proceedings.  The facts are largely undisputed.  In 1997, Pierce was convicted of indecent assault and battery on a child under the age of fourteen, a male relative.  In 1999, the district attorney for the Plymouth district petitioned to commit Pierce as an SDP, alleging that in addition to the victim in the criminal case, several other young men had told police that Pierce sexually assaulted them when they were boys.  Following a probable cause hearing on the petition, Pierce was temporarily committed to the MTC, where two qualified examiners concluded, based on their understanding that they could not consider the concerning but as-yet unsubstantiated allegations of other sexual assaults, that they were unable to opine that Pierce was an SDP.[1]
            In 2001, Pierce moved for summary judgment.  He argued:  "[T]he fact that two [q]ualified [e]xaminers retained at the request of the [c]ourt and obtained and paid by the Department of Correction[] opine using the correct legal standards that [Pierce] is not sexually dangerous . . . precludes a reasonable finder of fact from concluding that the Commonwealth has met its burden."  He further argued that a previous version of G. L. c. 123A had required, to support an SDP commitment, a qualified examiner's opinion that a person was an SDP.  See G. L. c. 123A, §§ 5, 6, as inserted by St. 1985, c. 752, § 1.  See also Commonwealth v. Arment, 412 Mass. 55, 57-58 (1992).  A judge denied Pierce's motion, ruling that the qualified examiners' opinions were not dispositive, in part because the Commonwealth was prepared to offer at trial a forensic psychologist's opinion that Pierce was an SDP.  The judge, of course, did not have the benefit of the Johnstone opinion, which was not decided until 2009.
            In 2002, the case proceeded to a jury-waived trial, where the Commonwealth offered evidence of Pierce's conviction as well as testimony from three other young men that Pierce had sexually abused them.  Neither qualified examiner testified, but the Commonwealth introduced the forensic psychologist's testimony that Pierce was an SDP.  The trial judge, expressly crediting the Commonwealth's witnesses, found beyond a reasonable doubt that Pierce was an SDP, and judgment entered accordingly.
            Instead of reporting for commitment as ordered, Pierce fled Massachusetts.[2]  In 2003, while Pierce was absent, he was charged with indecent assault and battery and statutory rape, based on the allegations of two of the additional victims who testified at his SDP trial.  In 2005, Pierce was taken into custody in Vermont and returned to the Commonwealth, where he was remanded to the MTC based on the 2002 judgment of commitment.  Pierce then filed a notice of appeal from that judgment, but the Commonwealth moved to dismiss the appeal as time barred.  A judge ordered the appeal dismissed, and Pierce did not appeal from that order.  That brought the original SDP proceeding to a close.
            In 2008, a jury convicted Pierce of the 2003 charges of indecent assault and battery and statutory rape.  Pierce was also convicted, after a jury-waived trial, of intimidation of a witness and of threatening to commit a crime, the victim in both instances being one of those who had testified against Pierce at his SDP trial.  Pierce was sentenced to an aggregate of from twelve to eighteen years in State prison, with ten years of probation to commence on his release.[3]
            In the meantime, in 2007, Pierce had filed the first of five petitions under G. L. c. 123A, § 9, for discharge from the MTC.  In anticipation of trial, two qualified examiners opined that Pierce remained an SDP, and he withdrew his petition before trial.  Pierce filed additional § 9 petitions in 2011, 2014, and 2017, but each time he withdrew the petition before trial.  Pierce filed his fifth § 9 petition in 2019.  That case remains pending, with trial scheduled for June 2025.
            2.  Habeas corpus proceeding.  In September 2022, Pierce completed the committed portion of his criminal sentences, but he remained at the MTC pursuant to the 2002 SDP commitment.  In 2023, Pierce petitioned for a writ of habeas corpus, claiming that his 2002 commitment was void and seeking immediate release, on the ground that the commitment was unsupported by any qualified examiner opinion that he was an SDP.  The superintendent opposed the petition, arguing that habeas corpus relief was unavailable because Pierce was challenging the original judgment of commitment and could have raised his claim of the absence of qualified examiner evidence in a direct appeal from that judgment.  See Pires, 438 Mass. at 99-100 (habeas corpus cannot be used as substitute for appeal).
            The judge concluded that this principle did not bar Pierce's claim.  In the judge's view, the requirement for qualified examiner evidence flowed from due process concerns discussed in the 2009 Johnstone decision; therefore, Pierce could not have raised his claim until 2009, after the time for him to appeal had passed, meaning he could raise the claim in a habeas corpus petition.  Concluding that Pierce's commitment was unconstitutional, the judge ordered his release.  The superintendent appealed and sought a stay pending appeal, which was denied.
            Discussion.  After briefly reviewing the basic principles of habeas corpus, we turn first, and somewhat counterintuitively, to the question raised by the merits of the superintendent's appeal:  whether the judge based his order on a claim that could not properly be raised in a habeas corpus petition.  Our discussion will provide necessary context for consideration of the remaining question:  whether the superintendent's appeal is properly before us.
            1.  Basic principles.  "Known as 'The Great Writ,' habeas corpus is one of the bedrock principles of Anglo–Saxon law that dates at least from the Magna Carta of 1215."  Pires, 438 Mass. at 97-98.  "The great purpose of the writ of habeas corpus is the immediate delivery of the party deprived of personal liberty."  Wyeth v. Richardson, 10 Gray 240, 241 (1857) (Shaw, C.J.).  "[T]he substance of this writ, so essential for the preservation of freedom, [must be] preserved unimpaired with all its time honored vigor."  Chambers's Case, 221 Mass. 178, 181 (1915).  Our Constitution requires us to view with skepticism any restrictions on the availability of habeas corpus relief:
"The privilege and benefit of the writ of habeas corpus shall be enjoyed in this Commonwealth in the most free, easy, cheap, expeditious and ample manner; and shall not be suspended by the legislature, except upon the most urgent and pressing occasions, and for a limited time not exceeding twelve months."
Part II, c. 6, art. 7 of the Massachusetts Constitution.
            "A habeas corpus petitioner must establish that (1) there has been a violation of the State or Federal Constitution or laws; (2) the violation has deprived him of his personal liberty; and (3) he is entitled to 'immediate release' from the custody of the respondent."  Crowley, petitioner, 54 Mass. App. Ct. 447, 451–452 (2002) (Crowley), quoting Stokes v. Superintendent, Mass. Correctional Inst., Walpole, 389 Mass. 883, 886 (1983).
            Habeas corpus relief is available under G. L. c. 248.  In the criminal context, relief in the nature of habeas corpus is also available through a motion under Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001), although the G. L. c. 248 procedure retains some applicability.  Averett, petitioner, 404 Mass. 28, 29-32 (1989) (Averett).  See 2001 Reporters' Notes to Rule 30 (a), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 558-559 (LexisNexis 2024).  Because there is no comparably broad court rule in the civil context, Pierce brought his petition under G. L. c. 248.[4]  The case law has long held that, if a statutory writ is granted, "the Commonwealth has no right to seek appellate review."  Pires, 438 Mass. at 101.  As we shall see, however, that rule is not unqualified. 
            2.  Habeas corpus no substitute for direct appeal.  a.  In general.  One of the "traditional limitations on a judge's discretion to issue writs of habeas corpus," Pires, 438 Mass. at 99, is that the writ "cannot be employed as a substitute for ordinary appellate procedure and so in general is not available where there is a remedy by writ of error or appeal."[5]  Id. at 100, quoting Crystal, petitioner, 330 Mass. 583, 590 (1953) (Crystal).  Habeas corpus "cannot take the place of a writ of error in a case which was within the jurisdiction of the court, and where the only question raised is the correctness of the rulings of the court."  Pires, supra, quoting O'Leary, petitioner, 325 Mass. 179, 184 (1950) (O'Leary).  Habeas corpus must be "based on grounds distinct from the issues at the indictment, trial, conviction, or sentencing stage" of a criminal case.  Averett, 404 Mass. at 30.  It is "an incorrect vehicle to raise" claims arising at those earlier stages; "[t]he statute, G. L. c. 248, does not apply" to such claims.  Bates v. Commonwealth, 434 Mass. 1019, 1020 (2001).
            So fundamental is this rule that in one case the Supreme Judicial Court characterized it as "jurisdiction[al]," in affirming the dismissal of a habeas corpus petition because it raised issues that could have been raised by direct appeal after the prisoner's criminal trial.[6]  Crowell v. Commonwealth, 352 Mass. 288, 288 (1967).  Relatedly, in two cases arising out of deprivations of liberty in civil proceedings, the court held that a habeas corpus petition could not be used to raise an issue that was open on direct appeal, even if the issue was not raised in the appeal that was taken, Lamb, petitioner, 368 Mass. 491, 496 (1975) (Lamb) (SDP proceeding), or even if no appeal was taken, Kauffman, petitioner, 413 Mass. 1010, 1011 (1992) (Kauffman) (guardianship proceeding leading to residential placement).  Cf. Crowley, 54 Mass. App. Ct. at 451, citing Lamb, supra (habeas corpus unavailable as substitute for timely certiorari review of prison disciplinary decision).  In essence, subject to narrow exceptions not applicable here, see note 9, infra, issues that could have been raised on appeal are waived for habeas corpus purposes.
            In response, Pierce points us to three habeas corpus cases in which the Supreme Judicial Court considered the merits of claims that SDPs could have raised on direct appeal from their original commitments.  But, in each of those cases, the court denied habeas corpus relief without discussing whether habeas corpus was a proper vehicle for asserting the claims.  See Drayton v. Commonwealth, 450 Mass. 1021 (2008); Andrews, petitioner, 368 Mass. 468 (1975) (Andrews);[7] LaMorre v. Superintendent of Bridgewater State Hosp., 347 Mass. 534 (1964).  None of those decisions persuades us that habeas corpus may be used as a substitute for a direct appeal.
            Pierce's reliance on Commonwealth v. Szargowicz, 77 Mass. App. Ct. 498 (2010), is equally unavailing.  In that case we suggested, in dictum, that habeas corpus would lie to seek release from an SDP commitment imposed without the individual having previously been convicted of a sex offense -- such a conviction being what we termed "the foundational requirement" for an SDP commitment.  Id. at 502-503.  We also recognized, however, that habeas corpus was unavailable to challenge the merits of a judgment of commitment, id. at 503 n.11, and we did not attempt to resolve the obvious tension between these two points.
            The Supreme Judicial Court stressed in 1853 that it was essential to reserve habeas corpus for claims that could not have been raised on appeal.  Habeas corpus, Chief Justice Shaw wrote, 
"[i]n general . . . is not to inquire into the merits of a judgment under which a party is committed; otherwise this very summary proceeding, regarded as so important to the security of personal liberty, would come to be regarded as a mere general appeal or writ of error, in all cases of conviction, followed by sentence of imprisonment."  
Clarke's Case, 12 Cush. 320, 321 (1853), quoted in Pires, 438 Mass. at 99.
            b.  Propriety of habeas corpus relief in this case.  The grant of relief here violated the principle that habeas corpus cannot be used as a substitute for direct appeal.  Pierce plainly could have appealed from the 2002 commitment and argued that it was erroneous because it was unsupported by any qualified examiner opinion that he was an SDP.  Notably, Pierce made essentially this very argument before the trial court in his unsuccessful 2001 summary judgment motion; he argued that the Commonwealth could not prove he was an SDP without a qualified examiner opinion to that effect, and that such proof was explicitly required by the prior version of G. L. c. 123A.  Although the Supreme Judicial Court did not have occasion to agree with that argument until Johnstone, 453 Mass. at 552, the court later made clear that Johnstone was not "a 'new' interpretation"; rather, "G. L. c. 123A . . . has had the same meaning since the effective date of the statute[ ]" (citation and quotation omitted).  McIntire, petitioner, 458 Mass. 257, 262 (2010), cert. denied, 563 U.S. 1012 (2011).  See St. 1999, c. 74, §§ 3-8 (amending portions of G. L. c. 123A, effective Sept. 10, 1999).[8]
            Pierce can fare no better because of the circumstance that, instead of timely appealing from the 2002 judgment of commitment, he fled the Commonwealth, and his belated attempt to appeal once he was returned in 2005 was unsuccessful.  What matters is not whether Pierce obtained appellate review of the qualified examiner issue, but that he could have done so.[9]  See Kauffman, 413 Mass. at 1011; Lamb, 368 Mass. at 496.
            The judge here concluded that the rule against using habeas corpus as a substitute for an appeal did not apply, because Pierce's claim fell within the "clairvoyance exception" to the waiver doctrine in criminal appeals.  See Commonwealth v. Randolph, 438 Mass. 290, 295 (2002); DeJoinville v. Commonwealth, 381 Mass. 246, 248 (1980).  The clairvoyance exception "applies to errors of a constitutional dimension 'when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise his claim at those junctures of the case.'"  Randolph, supra, quoting Commonwealth v. Rembiszewski, 391 Mass. 123, 126 (1984).  When the exception applies, a court "review[s] the claim as if it had been properly preserved."  Randolph, supra.  The judge applied the exception because he treated Pierce's claim as dependent on the 2009 decision in Johnstone, which he viewed as a constitutional ruling that due process requires a qualified examiner's opinion that a person is an SDP before the person may be committed as such.
            This misinterpreted Johnstone.  Even if we assume arguendo that the clairvoyance exception applies in the G. L. c. 248 habeas corpus context -- an issue the judge did not discuss and the parties have not briefed -- the exception would not apply here, because Pierce's claim that his confinement is unlawful is purely statutory.  Although he relies on Johnstone, "[t]he question in Johnstone was purely one of statutory interpretation."  McIntire, 458 Mass. at 261.  As we noted above, Johnstone's conclusion that G. L. c. 123A requires a qualified examiner's opinion was not a new interpretation of the statute; the statute has meant the same thing from the day it took effect, in 1999.  See McIntire, supra at 262.  St. 1999, c. 74, §§ 3-8.  See also Commonwealth v. Bruno, 432 Mass. 489, 494-497 (2000).
            To be sure, the Johnstone court prefaced its discussion of the qualified examiner issue by acknowledging, as it had in decisions dating back to 1977, that due process protections apply to SDP commitment proceedings.  See Johnstone, 453 Mass. at 549, citing Bruno, 432 Mass. at 502; Commonwealth v. Travis, 372 Mass. 238, 250 (1977).  But nowhere did Johnstone's detailed analysis of the G. L. c. 123A statutory scheme even mention due process requirements, let alone turn on any new development in due process jurisprudence.  See Johnstone, supra at 550-553.
            Nor did the Supreme Judicial Court transform Johnstone into a constitutional decision by later stating, "The thrust of Johnstone is that because a person may be involuntarily and indefinitely committed as an SDP, due process and G. L. c. 123A require proof of sexual dangerousness beyond a reasonable doubt based on expert testimony from a designated qualified examiner."  Green, petitioner, 475 Mass. 624, 629-630 (2016) (Green).  The court immediately followed that statement by quoting Johnstone:  "the statutory scheme . . . expressly sets the qualified examiners apart from the other sources of expert evidence" (emphasis added).  Green, supra at 630, quoting Johnstone, 453 Mass. at 552.  Johnstone thus does not say that either the Federal or the State Constitution requires an opinion of a qualified examiner before a person may be committed as an SDP.
            Further proof that Johnstone was not premised on any new development in due process doctrine is found in the Supreme Judicial Court's most recent decision on the qualified examiner issue.  See Chapman, petitioner, 482 Mass. 293 (2019) (Chapman).  There, in rejecting the Commonwealth's invitation to overrule Johnstone, the court recognized that the Legislature, despite having amended G. L. c. 123A twice since Johnstone, had "declined to exercise its authority to overturn the court's interpretation of [the] statute" (quotation and citation omitted).  Chapman, supra at 306-307.  If Johnstone's interpretation of the statute had been mandated by due process, of course, the Legislature would be powerless to overturn it.[10]
            In sum, Johnstone was not a new application of due process principles, but an interpretation of the SDP statute, which has had the same meaning since its enactment.  It would have required no clairvoyance for Pierce to make, in a direct appeal from his 2002 commitment, the same basic argument that he had already made in his summary judgment motion and that ultimately prevailed in Johnstone.  It was thus error to apply the clairvoyance exception to allow Pierce to raise his waived claim through a habeas corpus petition, and it was error to order Pierce released.[11]
            We do not agree with Pierce's argument that to hold his claim waived in the habeas corpus context would "preclude[] those deprived of liberty [of] any recourse in the law, no matter how unjust their detention."  The Massachusetts Rules of Civil Procedure, which are relevant although not controlling in SDP proceedings,[12] suggest at least two possible vehicles by which an SDP in Pierce's position could raise a claim.  First, an SDP could file a motion for relief from the judgment of commitment on the ground that it was void, although such a claim would have dubious merit in these circumstances.[13]  See Mass. R. Civ. P. 60 (b) (4), 365 Mass. 828 (1974).  Second, an SDP could file a motion for relief from judgment on the ground that "it is no longer equitable that the judgment should have prospective application," although we express no view on the equities of Pierce's particular situation.  Mass. R. Civ. P. 60 (b) (5), 365 Mass. 828 (1974).  Pierce may also, of course, press his pending 2019 petition for discharge under G. L. c. 123A, § 9.  That petition, while not a means of challenging his original commitment, would still lead to his release if the Commonwealth could not obtain a qualified examiner's opinion, and prove beyond a reasonable doubt, that he remains an SDP.  See McIntire, 458 Mass. at 266-267.  Cf. Gentile, petitioner, 339 Mass. 319, 321-322 (1959) (unnecessary to resolve on merits whether committed person's petition for habeas corpus was properly dismissed, or whether appeal from dismissal of petition was proper, where commitment statute itself created simple, presently available procedure to apply for release).
            3.  Propriety of superintendent's appeal.  Shortly before oral argument, we ordered the parties to be prepared to address the issue, not discussed in the briefs, whether a respondent is entitled to appeal from an order granting habeas corpus relief.  Pierce then moved to dismiss the appeal, and the superintendent filed a memorandum arguing that the appeal was proper.  We conclude that the superintendent has the better of the argument.
            a.  The Wyeth rule.  In 1857, the court held that a bill of exceptions could not be used to challenge a writ of habeas corpus issued by a single justice of the Supreme Judicial Court ordering the discharge of a prisoner.  Wyeth, 10 Gray at 241-242.  "The allowance of exceptions would be inconsistent with the object of the writ," i.e., "the immediate delivery" of a party unlawfully restrained.  Id. at 241.  Chief Justice Shaw's reasoning, stated summarily against a presumed background knowledge of Nineteenth Century appellate procedure, is not easy to understand today:
"The consequence of allowing exceptions must be, either that all further proceedings be stayed, which would be wholly inconsistent with the purpose of the writ; or that the exceptions must be held frivolous, and judgment rendered non obstante for the discharge of the party, in which case the exceptions would be unavailing.  The allowance of exceptions being thus inconsistent with the very purpose of the writ, the conclusion must be that the exceptions do not lie."
Id.  This language suggests that such exceptions might include challenges to rulings made before the entry of judgment, and that such exceptions, unless held frivolous by the single justice, would stay the entry of judgment in the petitioner's favor until the questions involved could be determined by the full Supreme Judicial Court.  An implication to that effect may be found in Rev. St. c. 81, § 29 (1835), to which there is no modern counterpart.[14]  Whatever its original basis, however, Wyeth gave rise to what the court in 1989 called "the longstanding rule in the Commonwealth . . . that appeal does not lie from an issuance of a writ of habeas corpus."  Averett, 404 Mass. at 32 (collecting cases).
            b.  Erosion of the Wyeth rule.  Despite this broad formulation, the court has repeatedly questioned Wyeth's reasoning, progressively narrowed its scope, and on occasion declined sub silentio to follow it.  As early as 1860 -- three years after Wyeth -- Chief Justice Shaw allowed the respondent in a habeas corpus case to take exceptions from his rulings underlying an order releasing the petitioner.  See Sanborn v. Carleton, 15 Gray 399 (1860), more fully reported in Sanborn's Case, 23 Monthly L. Rep. 7, 20, 24-25 (George P. Sanger ed., May 1860) (describing and reproducing respondent's bill of exceptions).  The court later described Sanborn as a case in which Chief Justice Shaw's allowance of exceptions "seems to be inconsistent with the decision in Wyeth."  King's Case, 161 Mass. 46, 49 (1894), citing Sanborn's Case, supra at 8.
            The King's Case court went on to state that "[w]hether, at a hearing on habeas corpus before a single justice sitting as a court, exceptions can be taken to any ruling on any question of law, or an appeal can be taken from any judgment upon matters of law apparent on the record, has not been decided," suggesting that the issue remained open notwithstanding Wyeth.  King's Case, 161 Mass. at 50.  Further calling Wyeth's reasoning into question, the King's Case court observed that "[t]he power of the justice to prevent any unnecessary imprisonment is ample, either by admitting the prisoner to bail or by discharging him pending the exceptions, if, in the opinion of the justice, he is entitled to be discharged on the ground that the exceptions are frivolous, immaterial, or intended for delay."  Id.
            In 1961, the court recognized that a petitioner denied habeas corpus relief in the Superior Court may appeal.  Stearns, petitioner, 343 Mass. 53, 57 (1961) (Stearns).  The court gave two reasons for doing so.  First, the petitioner's appeal fell within the terms of the statute generally authorizing appeals from the Superior Court, G. L. (Ter. Ed.) c. 231, § 96, the predecessor of today's G. L. c. 231, § 113, as amended through St. 2000, c. 159, § 282.[15]  See Stearns, supra at 58.  Second, and notwithstanding the concerns expressed in Wyeth, 10 Gray at 241, and in Chambers's Case, 221 Mass. at 179, the appeal would "result not in delaying but in speedily determining the question of [the petitioner's] right to be at liberty."  Stearns, supra.  See Needel, petitioner, 344 Mass. 260, 261 (1962) (Needel) (prisoner's appeal from dismissal of habeas corpus petition fell within terms of appeal statute; court reached merits of appeal).
            Next, in 1970, the court allowed the Commonwealth, on a bill of exceptions, to appeal a Superior Court order that had granted an SDP's habeas corpus petition and ordered him released.  See Newton, petitioner, 357 Mass. 346 (1970) (Newton).  On appeal, the court sustained the Commonwealth's exceptions and ordered the habeas corpus petition dismissed.  Id. at 353.  Other than to state that the Commonwealth's bill of exceptions was before it under "S.J.C. Rule 1:22 (351 Mass. 742—745)," a rule applicable to appeals under G. L. c. 231, § 113,[16] Newton, supra at 347, the court did not discuss whether the Commonwealth's appeal was proper.  But the issue was not simply overlooked.  The Commonwealth, at the outset of its opening brief, had affirmatively argued that Wyeth did not bar its appeal, because (1) appellate procedure had changed significantly since Wyeth was decided, (2) Stearns had already recognized that a petitioner's appeal from a ruling on a habeas corpus petition was statutorily permissible, (3) the Commonwealth's appeal, like Stearns's appeal, was authorized by G. L. c. 231, § 113, and (4) the appeal did not delay the administration of justice and was not inconsistent with the object of the writ of habeas corpus.[17]  We cannot know which of these arguments persuaded the court.  What we can conclude is that the Justices, who were a half century closer in time than are we to Wyeth and the procedural and substantive concerns that animated it, viewed those concerns as no longer a reason to bar the Commonwealth's appeal.
            Next, starting in 1978, the court began to recognize that merely labeling a petition as one seeking habeas corpus relief did not bar the respondent from appealing the grant of relief, if it did not consist of immediate release.  In Pina v. Superintendent, Mass. Correctional Inst., Walpole, 376 Mass. 659 (1978), a prisoner filed a habeas corpus petition asserting that he had been unlawfully denied various deductions from his sentence and so was being held beyond the term of that sentence.  Id. at 660.  A judge agreed that the prisoner was entitled to certain additional "good time" deductions but, instead of ordering his immediate release, ordered the respondent prison superintendent to recalculate the sentence and then to discharge the prisoner on the resulting release date, subject to a condition not relevant here.  Id. at 662-663.  When the respondent appealed, the prisoner invoked the Wyeth rule.  See Pina, supra at 660.  The court held, however, that "[e]ven assuming that the plaintiff was entitled to all the credits claimed, . . . he was not eligible for release at the time of the hearing on his petition."  Id. at 665.  Accordingly, he had "failed to state a claim for a writ of habeas corpus."  Id.  Although the "judge might have dismissed the action," id., there remained a controversy as to the rights of the parties, and so the judge could permissibly "construe [the] petition for a writ of habeas corpus as a claim for declaratory relief."  Id. at 666.  Because the relief granted by the judge was "declaratory in nature," and because the respondent could appeal from a declaratory judgment, the court held the appeal proper.  Id.
            The court followed this same approach in Stokes, 389 Mass. at 884-886, and Hennessy v. Superintendent, Mass. Correctional Inst., Framingham, 386 Mass. 848, 849-852 (1982).  In both cases the court held that even if the petitioners had been unlawfully deprived of liberty, they still were not entitled to immediate release from the respondents' custody, and therefore they had "failed to state a claim for a writ of habeas corpus."  Stokes, supra at 886; Hennessy, supra at 851.  See Crowley, 54 Mass. App. Ct. at 451-452 (listing three elements of habeas corpus claim).  The respondents were thus entitled, notwithstanding Wyeth, to appeal whatever relief had been granted.  Stokes, supra (declaratory and injunctive relief); Hennessy, supra at 851-852 (declaratory relief).[18]  We followed essentially the same approach in Royce, petitioner, 28 Mass. App. Ct. 397, 399 & n.1 (1990) (declaratory relief).
            A respondent's ability to appeal some grant of relief on a habeas corpus petition helps preserve one of the "traditional limitations on a judge's discretion to issue writs of habeas corpus," Pires, 438 Mass. at 99 -- that the writ is available only where the petitioner is "entitled to immediate release."  Id. at 101.  Where a habeas corpus petition leads to relief other than immediate release, Wyeth does not bar the respondent from appealing.
            The other, equally important "traditional limitation[]" on habeas corpus relief, as discussed supra, Pires, 438 Mass. at 99, is that the writ "cannot be employed as a substitute for ordinary appellate procedure and so in general is not available where there is a remedy by writ of error or appeal" (quotation and citation omitted).  Id. at 100.  We think that, to preserve this other limitation, a respondent must also be able to appeal a grant of habeas corpus relief that effectively duplicates what would have been available in an appeal.  "[O]therwise this very summary proceeding, regarded as so important to the security of personal liberty, would come to be regarded as a mere general appeal or writ of error."  Clarke's Case, 12 Cush. at 321.  See Pires, supra at 99.  The "long-standing rule that [habeas corpus] ought not be employed as a substitute for appellate review," id. at 101, must be enforceable not only by the court where the petition is filed but by the appellate courts as well.  Whatever the limits may have been at the time of Wyeth on the full Supreme Judicial Court's authority to review a ruling of law by one of its single justices, today it is difficult to conceive that such a trial court ruling would be unreviewable by an appellate court of the Commonwealth.
            c.  Whether Wyeth bars this appeal.  The superintendent's appeal here, like the petitioners' appeals in Needel and Stearns, and the Commonwealth's appeal in Newton, falls within the terms of the statute governing appeals from the Superior Court.  See Needel, 344 Mass. at 261; Stearns, 343 Mass. at 58.  See also G. L. c. 231, § 113.  And we see no reason why the superintendent's appeal frustrates the purpose of the writ of habeas corpus.  Notably, Pierce is already at liberty from the superintendent's custody.[19]  And the parties have cited nothing suggesting that, should a similar case arise in the future, the superintendent's pursuit of an appeal would necessarily, as a matter of law, delay a successful petitioner's release pending appeal.  See G. L. c. 248, § 25.  The present circumstances are thus unlike Wyeth, where, under then-prevailing procedures, the result of allowing the respondent's exceptions would have been that "all further proceedings be stayed."  Wyeth, 10 Gray at 241.  As the court said in 1894, "[t]he power of the justice to prevent any unnecessary imprisonment [pending appeal] is ample," King's Case, 161 Mass. at 50, and the same appears true today.
            We recognize the tension between, on the one hand, the court's allowance of an appeal in Newton (and its rationale for allowing appeals in Needel and Stearns), and, on the other hand, the court's reference in Averett to "the longstanding rule . . . that appeal does not lie from an issuance of a writ of habeas corpus."  Averett, 404 Mass. at 32.  Mindful that "we have no power to alter, overrule or decline to follow the holding of cases the Supreme Judicial Court has decided," Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485 (2003), but doubtful that the rule stated in Averett is the rule the court in practice applies, we read those decisions together and chart the path forward as we understand it.[20]
            We further recognize the possibility that a respondent might also be able to obtain review of an erroneous grant of habeas corpus relief by filing a petition under G. L. c. 211, § 3, in the Supreme Judicial Court.  Indeed, Pires itself was a sheriff's petition under c. 211, § 3, for review of a Superior Court order granting some relief on a habeas corpus petition.  Pires, 438 Mass. at 96-97.  See Massachusetts Parole Bd. v. Brusgulis, 403 Mass. 1010, 1010-1011 (1989) (same, in petition by parole board).  It might be argued that, as compared to an appeal, a respondent's petition under c. 211, § 3, would be more consistent with the "free, easy, cheap, expeditious and ample" availability of habeas corpus guaranteed by Part II, c. 6, art. 7 of the Massachusetts Constitution.  But the availability of relief under c. 211, § 3, is a question for the Supreme Judicial Court, not us.
            Conclusion.  Pierce's motion to dismiss the superintendent's appeal is denied.  The order granting Pierce's habeas corpus petition and requiring the superintendent to release him is reversed, and the case is remanded for any further proceedings as may be consistent with this decision.
So ordered. 
 
footnotes

 
            [1] The qualified examiners issued their opinions in 2001, before the court recognized that such opinions could be based in part on conduct that did not lead to a criminal conviction.  Commonwealth v. Markvart, 437 Mass. 331, 336-338 (2002).  One of the examiners stated that, if he could consider the other allegations as true, then he would opine that Pierce was "clearly a repetitive and compulsive sexual offender who suffers from a mental abnormality[,] that is, [p]edophilia," and that his lack of treatment and lack of understanding of his condition created an "increased risk of sexual offending."
            [2] The trial preceded the decision in Commonwealth v. Knapp, 441 Mass. 157 (2004), that if probable cause is found to believe a person is an SDP, and if the Commonwealth then moves for a trial, G. L. c. 123A, § 14 (a), does not permit pretrial release but requires that the person "be confined to a secure facility for the duration of the trial," which must occur within sixty days.  Knapp, supra at 160.
            [3] Pierce had also pleaded guilty in 2006 to a charge of failure to register as a sex offender, for which he was sentenced to three years of probation, to commence upon his release from custody.
            [4] The parties have not addressed what section or sections of G. L. c. 248 might apply to Pierce's petition.  The petition itself cited G. L. c. 248, § 1 (habeas relief as of right).    That section might be thought inapplicable because § 1 specifically excludes cases in which a person's liberty is restrained "in execution upon legal process, civil or criminal."  See McCastle, petitioner, 401 Mass. 105, 106-107 (1987); Stearns, petitioner, 343 Mass. 53, 57 (1961).  Under G. L. c. 248, § 25, habeas corpus relief is available as a matter of discretion, and the exclusion for "a person who is imprisoned or restrained of his liberty pursuant to a criminal conviction" is on its face inapplicable to a person civilly committed under G. L. c. 123A.  A person granted discretionary habeas corpus relief may be "grant[ed] bail . . . for whatever cause he has been committed or restrained, or . . . discharge[d] as law and justice require."  G. L. c. 248, § 25.  We do not resolve any of these issues.
            [5] In determining whether the availability of some form of appellate review precludes habeas corpus relief, the Supreme Judicial Court has appeared to view the former "writ of error" and what is now an "appeal" as comparable.  See Pires, 438 Mass. at 99-100, and cases cited.  Thus, for convenience, we will use the term "appeal" herein to refer as well to cases that involved writs of error.  See generally Guerin v. Commonwealth, 337 Mass. 264, 266-269 (1958) (describing writ of error, appeal, exceptions, and other ways in which criminal case could come before Supreme Judicial Court).  Many of the mechanisms described in Guerin have been superseded by the rules of appellate procedure.  See 1979 Reporter's Notes to Rule 1 (a), Mass. Ann. Laws Court Rules, Rules of Appellate Procedure, at 689 (LexisNexis 2024).  See also Mass. R. A. P. 1 (c), as amended, 454 Mass. 1601 (2019) (defining "appeal").
            [6] We do not adopt the term "jurisdictional" here.  "Jurisdiction, [the] Court has observed, is a word of many, too many, meanings" (citation omitted).  Wilkins v. United States, 598 U.S. 152, 156 (2023).  We have little doubt that the Superior Court in Crowell had jurisdiction, in the sense of the power to decide the petition.  See Commonwealth v. Doughty, 491 Mass. 788, 805 (2023) ("Subject matter jurisdiction concerns the power of the court to entertain a particular category of case").  See also Wilkins, supra at 157.
            [7] In Andrews, the court extended certain rights to SDPs seeking release under G. L. c. 123A, § 9, but those involved issues that the petitioner likely could not have raised on appeal from his original commitment.  See Andrews, 368 Mass. at 483-491.
            [8] Although the immediate issue in McIntire was the requirement for a qualified examiner opinion in proceedings for release under G. L. c. 123A, § 9, see 458 Mass. at 262, Johnstone held that the same requirement applied in original commitment proceedings under G. L. c. 123A, § 12, such as Pierce's commitment here.  See Johnstone, 453 Mass. at 553.
            [9] Were the original commitment order void, for lack of jurisdiction or some other reason, habeas corpus might have been an appropriate remedy.  See Crystal, 330 Mass. at 591 (lack of jurisdiction); O'Leary, 325 Mass. at 182-184 (lack of fundamental procedural due process); Clarke's Case, 12 Cush. at 323 (lack of jurisdiction).  But Pierce's claim that his commitment was void on due process grounds does not avail him here.  The court already ruled in McIntire that the lack of a qualified examiner's opinion that a person is an SDP did not render the commitment void, but merely "voidable for error" and "therefore valid until reversed through the legal process" (quotation and citation omitted).  McIntire, 458 Mass. at 265.  See Crowell, 352 Mass. at 289.
            [10] The Chapman court acknowledged that Johnstone was "unlike . . . a constitutional case" (citation omitted).  Chapman, 482 Mass. at 306.  Elsewhere the court repeatedly stated that Johnstone was an interpretation of G. L. c. 123A.  Chapman, supra at 294, 303, 304, 305, 307.
            [11] We are unpersuaded by Pierce's argument that his claim, even if waived, should be reviewed for whether the absence of qualified examiner evidence created a substantial risk of a miscarriage of justice.  Although such review is available for unpreserved claims on direct appeal from SDP commitments, R.B., petitioner, 479 Mass. 712, 715-718 (2018), and of course on direct and collateral review in criminal cases, Randolph, 438 Mass. at 294-295, Pierce cites no case, and we have found none, engaging in such review on a habeas corpus petition, whether in a civil or criminal context.  Indeed, such review would contravene the principle that habeas corpus is not a substitute for an appeal.
            [12] SDP proceedings are not directly governed by those rules, see Mass. R. Civ. P. 81 (a) (1) (8), as amended, 481 Mass. 1401 (2018), but such proceedings, "[i]n respects not governed by statute . . . shall follow the course of the common law, as near to the[] rules as may be," with exceptions for certain discovery mechanisms not at issue here.  Mass. R. Civ. P. 81 (a) (3), as amended, 481 Mass. 1401 (2018).
            [13] A claim that a judgment was rendered without due process might be asserted through a motion to vacate the judgment as void, which lies without time limit.  See Harris v. Sannella, 400 Mass. 392, 395 (1987); Uzoma v. Okereke, 88 Mass. App. Ct. 330, 331 (2015).  Pierce's claim to that effect, however, has no merit.  See note 9, supra.
            [14] That statute, referring to exceptions to a single justice's "opinion, direction, or order," Rev. St. c. 81, § 28 (1835), provided:
"Upon the allowance of such exceptions, the question arising thereon shall be considered by the full court, to be held for the same county; if however, the exceptions shall appear to the justice, before whom the trial is had, to be frivolous, immaterial, or intended for delay, the judgment may be entered, and execution may be awarded or stayed, on such terms as the court shall deem reasonable, notwithstanding the allowance of the exceptions."
Rev. St. c. 81, § 29 (1835).  The parties have not cited, nor have we found, any current analog to that statute that would apply in the habeas corpus context.  Exceptions are now unnecessary in civil actions.  See G. L. c. 231, § 112B.  The general rule that "[n]o execution shall issue during the pendency of an appeal," G. L. c. 231, § 115, is not relevant here.  The habeas corpus statutes treat the writ as a command to the respondent to produce the petitioner before the court, which may then discharge the petitioner if appropriate, without the further issuance of any separate execution.  See G. L. c. 248, §§ 11-12, 15, 23, 27-33.
            [15] That statute provides in pertinent part that "[a] party aggrieved by a final judgment of the superior court . . . may appeal therefrom to the appeals court or, subject to the provisions of [G. L. c. 211A, § 10], to the full court of the supreme judicial court."  G. L. c. 231, § 113.
            [16] Rule 1:22 at that time authorized a party to "comply[] with the requirements of G. L. c. 231, § 113, as amended," by filing an "outline bill of exceptions."  Rule 1:22 of the Rules of the Supreme Judicial Court, as appearing in 351 Mass. 742 (1967).
            [17] The Commonwealth's brief is available on microfiche at the Social Law Library.  The petitioner's brief in Newton, also available there, did not address the appealability issue.
            [18] Pierce asks that, if we conclude that habeas corpus relief was inappropriate here, we affirm on the ground that the judge, as in Stokes, granted merely declaratory and injunctive relief.  But relief was available in Stokes because, among other things, the prisoner's claim that he was improperly confined to a segregation unit could not have been raised on appeal from the criminal conviction pursuant to which he was confined.  The same is not true of Pierce's commitment to the MTC.  Declaratory relief is unavailable as a substitute for pursuing available appellate remedies.  Papp v. Westborough Gardens LLC/BVF-V Westborough LLC, 493 Mass. 1018, 1018 (2023); Hathaway v. Commissioner of Ins., 379 Mass. 551, 553 (1980).  Pierce cites no case suggesting that injunctive relief is available in such circumstances.
            [19] The parties have not addressed, and we express no view on, what relief the superintendent may obtain based on our ruling that the order for Pierce's release was erroneous, or whether G. L. c. 248, § 24, has any bearing on the matter.  See Hennessy, 386 Mass. at 852 n.3 (noting question of applicability of § 24 if respondent successfully appealed from issuance of writ).  See also Newton, 357 Mass. at 346, 353 (ruling for Commonwealth on its appeal of order to release SDP; ordering habeas corpus petition dismissed).
            [20] Perhaps reflecting the uncertainty in this area, the Averett court itself, despite stating that no appeal was available, did not dismiss the appeal, but instead "conclude[d] that the orders [granting habeas corpus relief] below should be affirmed," and proceeded to do so.  Averett, 404 Mass. at 29, 32.