## John McIntire, petitioner.

Worcester. September 7, 2010. - November 5, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Sex Offender. Evidence,* Sex offender, Expert opinion. *Practice, Civil,* Retro-
activity of judicial holding. *Jurisdiction,* Sex offender. *Constitutional Law,*
Sex offender. *Due Process of Law,* Sex offender.

Statement that where a judicial decision does not announce new common-law
rules or rights but rather construes a statute, no analysis of retroactive or
prospective effect is required because at issue is the meaning of the statute
since its enactment. [260-262]
In proceedings arising from a discharge petition brought by an individual
confined as a sexually dangerous person (SDP), the petitioner was entitled
to a directed verdict in his favor, where there was no dispute that both
qualified examiners opined that the petitioner no longer remained sexually
dangerous [262]; however, the petitioner's continued confinement did not
violate principles of substantive due process, where there had been no
finding or judgment that the petitioner was no longer an SDP, and where
the petitioner had the continuing ability under G. L. c. 123A, § 9, to bring
annual petitions for discharge [266-267].
Reversal of the judgment in a 2002 discharge proceeding in favor of the
petitioner did not entitle the petitioner to an order of discharge from a
treatment center for sexually dangerous persons (SDPs), where the judg-
ment in the 2002 proceeding was legally erroneous and thus voidable for
error but not void; accordingly, because the 2002 judgment had not been
reversed at the time of the petitioner's 2005, 2008, and 2010 discharge
proceedings, it remained validly in effect and the petitioner was legally
held at the treatment center when he filed those later petitions, over which
the Superior Court properly exercised jurisdiction and entered judgments
adjudicating the petitioner as remaining an SDP. [263-266]

Civil action commenced in the Superior Court Department on
January 31, 2000.

The case was tried before *Robert A. Mulligan,* J., and a mo-
tion for new trial, filed on January 16, 2007, was heard by him.

After review by the Appeals Court, the Supreme Judicial Court
granted leave to obtain further appellate review.

*Michael A. Nam-Krane* for the petitioner.

*Brian P. Mansfield* for the Commonwealth.

BOTSFORD, J. The question we here consider concerns the application of this court's decision in *Johnstone, petitioner*, 453 Mass. 544 (2009) (*Johnstone*), to a discharge petition brought by a sexually dangerous person (SDP) that was pending on appeal on the date of the *Johnstone* decision. In *Johnstone*, this court held that "in order for the Commonwealth to proceed to trial in a [SDP] discharge proceeding under G. L. c. 123A, § 9, at least one of the two qualified examiners [appointed to examine the petitioner] must opine that the petitioner remains sexually dangerous." *Id.* at 553. If neither qualified examiner so opines, the petitioner is entitled to a directed verdict and judgment in his favor, and an order of discharge. See *id.* at 546, 551-553.

The petitioner in this case, John McIntire, brings a direct appeal from an adverse judgment in a discharge proceeding that was tried in the Superior Court in 2002, long before the *Johnstone* decision (2002 discharge proceeding). The Commonwealth proceeded to trial although neither of the qualified examiners appointed to examine the petitioner under G. L. c. 123A, § 9, had opined that he remained sexually dangerous. We agree with the petitioner that *Johnstone* applies to his direct appeal from the judgment in the 2002 discharge proceeding, and requires that the judgment be vacated. However, we disagree that as a result of a *Johnstone* error, the judgment in that case was void from inception; the judgment was voidable on account of error, but not void. Accordingly, we conclude that the judgments adverse to the petitioner in his subsequent discharge proceedings — tried in 2005, 2008, and 2010,[1] respectively — also are not void, and that the petitioner presently is not entitled to an order of discharge.

1. *Background.* We recite the facts relevant to this appeal, which are undisputed.[2] In March, 1984, when he was twenty years old, the petitioner pleaded guilty to charges of indecent assault and battery on a child under the age of fourteen, G. L.

[1]The record includes references to the 2005 and 2008 proceedings. The petitioner indicates in his brief that in June, 2010, while this appeal was pending, another, later petition for discharge was tried in the Superior Court, and the petitioner was again found to be a sexually dangerous person.

[2]The statutory scheme governing SDPs, set forth in G. L. c. 123A, supplies the context for this case. For a detailed description, see *Johnstone, petitioner*, 453 Mass. 544, 546-549 (2009) (*Johnstone*).

c. 265, § 13B; rape and abuse of a child under the age of sixteen (two indictments), G. L. c. 265, § 23; assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A; kidnapping, G. L. c. 265, § 26; and larceny, G. L. c. 266, § 30. Following his guilty pleas, he was committed to the Massachusetts Treatment Center in Bridgewater (treatment center) for sixty days for examination, and in November, 1984, he was adjudicated an SDP by a judge in the Superior Court. As a result of that adjudication, and in lieu of sentencing on the indecent assault and battery and rape and abuse charges, the petitioner was committed to the treatment center in November, 1984; he was twenty-one years old.[3]

On January 31, 2000, the petitioner filed a petition pursuant to G. L. c. 123A, § 9, seeking discharge from the treatment center on the ground that he was no longer an SDP. During a jury trial in the Superior Court on the petition in June, 2002, the two appointed qualified examiners,[4] called as witnesses by the petitioner, both testified that, in their professional opinion, the petitioner was no longer an SDP. The petitioner also called two other psychologists who testified to the same effect. The Commonwealth relied exclusively on a report by the Community Access Board (CAB) and the testimony of the CAB's chair, a licensed psychologist, who opined that the petitioner remained sexually dangerous. The jury found that the petitioner remained an SDP, and judgment entered on the jury's verdict. In July, 2002, the petitioner filed a notice of appeal in the trial court; the appeal was entered in the Appeals Court in August, 2006. In

___

[3]In December, 1984, the petitioner also received concurrent suspended sentences of from eight to ten years on the convictions of assault and battery by means of a dangerous weapon and kidnapping.

[4]Pursuant to G. L. c. 123A, § 9, when a petition for discharge is filed, the judge is required to "order the petitioner to be examined by two qualified examiners, who shall conduct examinations, including personal interviews, of the person on whose behalf such petition is filed and file with the court written reports of their examinations and diagnoses, and their recommendations for the disposition of such person." See *Johnstone*, 453 Mass. at 546-549. A "[q]ualified examiner" is defined in G. L. c. 123A, § 1, as a licensed physician "who is either certified in psychiatry by the American Board of Psychiatry and Neurology or eligible to be so certified," or a licensed psychologist, "provided, however, that the examiner has had two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by the commissioner of correction."

December, 2006, the petitioner sought a stay of appeal in order to file a motion for a new trial in the Superior Court, which the Appeals Court granted. The petitioner filed his new trial motion in the Superior Court in January, 2007. In July, 2007, his counsel filed a motion to amend the petitioner's memorandum in support of the motion for a new trial. The amended memorandum raised, for the first time, the petitioner's argument that the 2002 judgment was improper because both qualified examiners had opined that he was no longer an SDP, and only the chair of the CAB offered an opinion that the petitioner was still an SDP. In November, 2007, the judge who had presided at the 2002 discharge proceeding denied the petitioner's motion for a new trial. The petitioner appealed from the denial, and the Appeals Court consolidated that appeal with his direct appeal from the 2002 judgment.

In a memorandum and order issued pursuant to its rule 1:28 in 2010, the Appeals Court concluded that the interpretation of G. L. c. 123A, § 9, set forth in *Johnstone* governed the petitioner's appeal, and that, accordingly, the judgment must be reversed because neither qualified examiner had determined that the petitioner remained an SDP. *McIntire, petitioner*, 76 Mass. App. Ct. 1117 (2010). That court also concluded that contrary to the petitioner's argument, the error affecting the judgment in the 2002 discharge proceeding neither rendered the 2002 judgment void ab initio nor invalidated the judgments in later discharge proceedings in which the petitioner had been found to remain an SDP. We granted the petitioner's application for further appellate review.

2. *Discussion.* a. *Application of* Johnstone. The petitioner argues that our holding in *Johnstone*, 453 Mass. at 553, must be applied retroactively to invalidate the jury verdict and resulting judgment against him in 2002; for its part, the Commonwealth contends that the court can, and should, apply *Johnstone* only on a prospective basis to discharge petitions filed after the date of the *Johnstone* decision in 2009. We agree with the Appeals Court that a retroactive-prospective analysis is unnecessary.

"In general, changes in the common law brought about by judicial decisions are given retroactive effect." *Halley* v. *Birbiglia*, 390 Mass. 540, 544 (1983). See *Papadopoulos* v. *Target Corp.*, 457 Mass. 368, 384-385 (2010) (applying retroactively

new common-law rule of premises liability based on abolition of distinction between natural and unnatural accumulation of snow and ice); *Schrottman* v. *Barnicle*, 386 Mass. 627, 631 (1982) ("Decisional law is generally applied 'retroactively' to past events"). Where a decision does not announce new common-law rules or rights but rather construes a statute, no analysis of retroactive or prospective effect is required because at issue is the meaning of the statute since its enactment. See *Shawmut Worcester County Bank* v. *Miller*, 398 Mass. 273, 281 (1986) (rejecting argument that court's construction of G. L. c. 106, § 9-504 [1] and [3], adopted in that case, should be applied on prospective basis only: "although this court has not previously dealt with the issues raised here, we are not announcing common law rules but rather are construing certain statutory provisions. Those provisions have had the same meaning since the effective date of the statutes"). See also *Mouradian* v. *General Elec. Co.*, 23 Mass. App. Ct. 538, 542 n.3 (1987).

The question in *Johnstone* was purely one of statutory interpretation: whether, under G. L. c. 123A, § 9, at a discharge proceeding "in which both qualified examiners form the opinion that the petitioner is no longer sexually dangerous, the testimony of a CAB member and the accompanying CAB report constitute evidence that is sufficient for the Commonwealth to avoid a directed verdict." *Johnstone*, 453 Mass. at 545. We construed § 9 to mean that the qualified examiners perform an essential gatekeeping function with respect to whether a person may be classified as an SDP.[5] *Id.* at 549-553. Although we had noted this issue of statutory interpretation before in a similar context,

---

[5]See *Johnstone*, 453 Mass. at 552:

> "The statutory scheme therefore expressly sets the qualified examiners apart from other sources of expert evidence. Indeed, the role of the qualified examiners within that scheme persuades us that the Legislature intended them to serve in a capacity similar to that of a gatekeeper, deciding whether a person warrants commitment as a sexually dangerous person. Implicit in this view is the conclusion that, if both qualified examiners determine that a person is not sexually dangerous, the Commonwealth cannot meet its burden of proof. Assuming without deciding that an opinion of current sexual dangerousness included in a CAB report constitutes expert evidence of the kind that we have required . . . the CAB's opinion cannot serve as a substitute for those of the qualified examiners under the statutory scheme created by G. L. c. 123A."

see *Commonwealth* v. *Poissant*, 443 Mass. 558, 560 n.6 (2005),[6] it is true that *Johnstone* represents the first time we considered it directly and resolved it. The fact that the question had not been answered before, however, does not mean that it represented a "new" interpretation.[7] Rather, as in *Shawmut Worcester County Bank* v. *Miller*, 398 Mass. at 281, G. L. c. 123A, § 9, has "had the same meaning since the effective date of the statute[]."

The interpretation of c. 123A, § 9, set forth in *Johnstone*, therefore, is the one we apply in considering here the petitioner's direct appeal from the judgment in the 2002 discharge proceeding. There is no dispute that both qualified examiners opined there that the petitioner no longer remained sexually dangerous. Given this fact, under § 9, the Commonwealth in this case was not entitled to rely on the CAB report and the testimony of the CAB's chair to meet its burden of proof with respect to the petitioner's then current sexual dangerousness, see *Andrews, petitioner*, 368 Mass. 468, 489-490 (1975), and, as in *Johnstone*, the petitioner was entitled to a directed verdict in his favor. *Johnstone*, 453 Mass. at 546, 553. The judgment entered in the Superior Court on July 3, 2002, must be reversed.

---

[6]In *Commonwealth* v. *Poissant*, 443 Mass. 558, 560 n.6 (2005), we identified but did not answer essentially the same question about the role of qualified examiners under G. L. c. 123A, § 12 (*b*), which governs initial SDP commitment proceedings, that is, whether § 12 (*b*) "implicitly requires that at least one of the qualified examiners support the position that a defendant is sexually dangerous in order for the Commonwealth to proceed to trial." In our *Johnstone* decision, we supplied the answer, stating that the reasoning underlying our interpretation of G. L. c. 123A, § 9, in *Johnstone* itself also applied to G. L. c. 123A, § 12 (*b*). *Johnstone*, 453 Mass. at 545, 553.

[7]In *Commonwealth* v. *Dagley*, 442 Mass. 713, 721 n.10 (2004), cert. denied, 544 U.S. 930 (2005), the court noted that "[w]hen announcing a new common-law rule, *a new interpretation of a State statute*, or a new rule in the exercise of our superintendence power, there is no constitutional requirement that the new rule or new interpretation be applied retroactively, and we are therefore free to determine whether it should be applied prospectively" (emphasis added). The Commonwealth latches onto the quoted sentence to support its position that, although perhaps not required, we should choose to apply the *Johnstone* interpretation of G. L. c. 123A, § 9, prospectively. We decline to do so. The language at issue in the *Dagley* case was making the point that, depending on whether a new rule announced in a case is constitutionally required, principles of retroactivity operate differently, and the footnote sought to offer some illustrations of instances where new rules are not constitutionally based. The *Dagley* case itself did not deal with a statute; we take the reference to a "new interpretation of a State statute" as an illustration of a point, and nothing more.

b. *Validity and effect of subsequent SDP discharge proceedings.*
We must decide whether the reversal of the judgment in the
2002 discharge proceeding currently entitles the petitioner to an
order of discharge from the treatment center. While his appeal
from the 2002 judgment was pending, the petitioner filed ad-
ditional petitions for discharge pursuant to G. L. c. 123A, § 9,
as the statute entitled him to do. See G. L. c. 123A, § 9, first
par. ("Any person committed to the treatment center shall be
entitled to file a petition for examination and discharge once in
every twelve months"). Three such petitions went to trial in
2005, 2008, and 2010, respectively; at the conclusion of each,
the petitioner was found to remain an SDP.[8]

The petitioner contends that these post-2002 proceedings are
irrelevant to the disposition of this appeal, because when the
two qualified examiners "found him not sexually dangerous" in
connection with his 2002 discharge petition, the Superior Court
lost jurisdiction over him. As a result of the qualified examin-
ers' determinations, he claims, his immediate discharge is
required on both statutory and substantive due process grounds.
We disagree.

(i) The petitioner's statutory claim is that under the reading
of G. L. c. 123A, § 9, adopted by this court in *Johnstone*, his
petition for discharge should never have gone to trial in 2002 in
light of the qualified examiners' negative opinions on his sexual

---

[8]In the Appeals Court, the Commonwealth filed a supplemental record ap-
pendix, placing before the court documents relating to the petitioner's discharge
proceedings held in 2005 and 2008. The petitioner moved to strike the Com-
monwealth's filing because the documents were not part of the record of the
2002 discharge proceeding that was the subject of the appeal. The motion to
strike was referred to the panel designated to decide the appeal and was
subsequently denied by the panel. The petitioner argues that the Appeals Court
improperly considered materials outside the record, to his detriment. The
documents apparently at issue are the qualified examiners' reports prepared in
conjunction with the 2005 and 2008 discharge petitions. We agree that these
later reports are not part of the record in this appeal, but the Appeals Court
(and this court) may take judicial notice of the docket entries in the 2005 and
2008 cases, which include the judgments. See, e.g., *Care & Protection of Zita*,
455 Mass. 272, 276 n.11 (2009). With respect to the discharge petition tried in
2010, the petitioner commendably informed this court in his brief of both the
trial and its outcome. The petitioner does not suggest that there was any
*Johnstone* error with respect to the qualified examiners' opinions in the 2005,
2008, or 2010 discharge proceedings, and apparently has not appealed from
any of them.

dangerousness, and that the resulting Superior Court judgment was without authority and void ab initio. Given the voidness of the original judgment, the argument continues, the subsequent judgments are also void and "nullities," a conclusion flowing from the fact that after 2002 the petitioner was a person whom the Commonwealth did not hold legally in its custody, and therefore the Superior Court lacked jurisdiction over him. The petitioner's argument fails.

"A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed." *Harris* v. *Sannella*, 400 Mass. 392, 395 (1987), quoting *Lubben* v. *Selective Serv. Sys.*, 453 F.2d 645, 649 (1st Cir. 1972). To be void, a judgment must issue from a court that "lacked jurisdiction over the parties, lacked jurisdiction over the subject matter, or failed to provide due process of law." *Harris* v. *Sannella, supra*. A mere error in a court's determination of its own jurisdiction, however, will not render a judgment void; "[o]nly in the rare instance of a clear usurpation of power will a judgment be rendered void." *Id.*, quoting *Lubben* v. *Selective Serv. Sys., supra*.

The 2002 judgment was not void. Clearly, the Superior Court had jurisdiction over the petitioner and the subject matter of the case: G. L. c. 123A, § 9, expressly authorizes an SDP to file a petition for discharge and provides that it must be filed in the Superior Court; and the petitioner makes no argument that the Superior Court conducted the proceeding in a manner that failed to afford the petitioner the process that he was due. As previously discussed, what *Johnstone* establishes is that the failure of at least one qualified examiner to opine that a petitioner remains an SDP renders the Commonwealth unable to meet its burden of proof. *Johnstone*, 453 Mass. at 552. A judgment entered after a trial where the Commonwealth has not introduced sufficient evidence is not jurisdictionally flawed, but legally erroneous.[9] Moreover, even if one were to classify the error in the 2002 discharge proceeding judgment as raising a jurisdictional issue,

---

[9]Indeed, the petitioner's argument logically fails on its own terms. In order for the petitioner validly to be discharged from the treatment center, a court with jurisdiction must enter the order of discharge. See G. L. c. 123A, § 9,

the erroneous interpretation of a statutory grant of jurisdiction is not "equivalent to acting with total want of jurisdiction and does not render the judgment a complete nullity." *Harris* v. *Sannella*, 400 Mass. at 395, quoting *Hooks* v. *Hooks*, 771 F.2d 935, 950 (6th Cir. 1985). Cf. *Chicot County Drainage Dist.* v. *Baxter State Bank*, 308 U.S. 371, 374, 376-378 (1940) (assumption of jurisdiction based on statute later declared unconstitutional may be appealed but is not nullity).

Where the underlying judgment is erroneous, it is voidable for error and not void, and is therefore "valid until reversed through the legal process." *Lynch, petitioner*, 379 Mass. 757, 760 (1980). See *Lewis* v. *Commonwealth*, 329 Mass. 445, 447-448 (1952); *DuPont* v. *Commissioner of Correction*, 59 Mass. App. Ct. 908, 910 (2003), cert. denied, 542 U.S. 943 (2004).[10] See also *Streeter* v. *Worcester*, 336 Mass. 469, 472 (1957), quoting *Moll* v. *Wakefield*, 274 Mass 505, 507 (1931) ("A court with jurisdiction may make a wrong decision . . . and thus a decision may not be a true adjudication. But such decisions are not void. They stand unless reversed under some recognized and available procedure"). Accordingly, because the 2002 judgment had not been reversed at the time of the petitioner's 2005, 2008, and 2010 discharge proceedings, that earlier judgment remained validly in effect, and the petitioner was therefore legally held at the treatment center as an SDP when he filed the three later discharge petitions.[11] As a result, the Superior Court had jurisdiction to entertain those petitions and to enter judg-

---

second par. ("Unless the trier of fact finds that such person remains a sexually dangerous person, [the court] shall order such person to be discharged from the treatment center"). If, in relation to the 2002 discharge proceeding, the Superior Court lacked jurisdiction from inception as the petitioner argues, the court would not have had the necessary authority to order him discharged.

[10]The petitioner asserts that *Lynch, petitioner*, 379 Mass. 757 (1980); *Lewis* v. *Commonwealth*, 329 Mass. 445 (1952); and *DuPont* v. *Commissioner of Correction*, 542 U.S. 943 (2004), are not pertinent. He emphasizes in particular the different factual circumstances and statutes at issue in those cases. While there are certainly factual distinctions, the rule that the cited cases state — erroneous judgments are voidable, but not void — is one of general application, and not fact dependent.

[11]The petitioner's reliance on *Commonwealth* v. *Gillis*, 448 Mass. 354 (2007) (*Gillis*), to contest the validity of his custody after 2002 is misplaced. The petitioner argues that because he should have been released in 2002, he was no longer in legal custody of the Commonwealth thereafter, and that the

ments on them.[12] Because those judgments effectively adjudicated the petitioner as remaining an SDP, he is not entitled to an order of discharge from the treatment center at this time.

(ii) The petitioner also argues that his continued confinement following the qualified examiners' opinions in 2002 that he was no longer an SDP violates principles of substantive due process; he claims that consistent with this court's decision in *Commonwealth* v. *Travis*, 372 Mass. 238, 246-251 (1977), he should be released immediately. There is a significant distinction between the petitioner's situation and that of the defendant in *Travis*. In that case, a Superior Court judge had found, after a trial, that the defendant was no longer an SDP, and had ordered him to be conditionally released. *Id.* at 239. We held that when the defendant later violated terms of his conditional release, the trial judge was without authority to recommit him as an SDP — that it would be "intolerable" and contrary to due process "that a person found not sexually dangerous should be indefinitely burdened with the spectre of vacation of that finding." *Id.* at 250. In the present case, there has been no finding or judgment that the petitioner is no longer an SDP; the opinions of the qualified examiners to that effect in 2002 are opinions, not

---

Superior Court therefore lost jurisdiction. In *Gillis*, the court determined that the Commonwealth was without statutory authority to initiate an SDP commitment proceeding under G. L. c. 123A, § 12 (*b*), with respect to individuals convicted of sex offenses who were civilly committed to Bridgewater State Hospital after completing their criminal sentences. *Id.* at 358-369, 363-364. *Gillis* is not apposite. The court there construed G. L. c. 123A, § 12, determining that neither the term "prisoner" nor the term "confined" allowed the Commonwealth to seek SDP commitment of individuals who were civilly committed to Bridgewater State Hospital under G. L. c. 123, §§ 7 and 8, but had finished serving their criminal sentences and had no charges pending against them. *Id.* at 362-364. See *Commonwealth* v. *Allen*, 73 Mass. App. Ct. 862, 864 (2009) (defendant in State custody as result of clerical error was not "prisoner" within meaning of G. L. c. 123A, § 12 [*b*], and Commonwealth could not seek his commitment as SDP). Here, the petitioner has already been adjudicated an SDP — beginning in 1984 — and it is he who seeks his discharge under G. L. c. 123A, § 9.

[12] It is important to note that despite the erroneous judgment in 2002, the petitioner continued thereafter to qualify as a "[s]exually dangerous person" as that term is defined in G. L. c. 123A, § 1, because, as a result of the 1984 trial, he had been convicted of sexual offenses and had been "previously adjudicated as [an SDP]." This case does not raise the issue whether a person validly adjudicated an SDP still qualifies as such if the conviction of a governing sex offense on which the SDP adjudication was based is later vacated.

adjudications. The petitioner has the continuing ability under G. L. c. 123A, § 9, to bring annual petitions for discharge, and if the Commonwealth is not able to prove beyond a reasonable doubt that he remains an SDP, he will be entitled to an order of discharge.[13] There has been no denial of the petitioner's substantive due process rights.

3. *Conclusion.* The judgment of the Superior Court dated July 3, 2002, is reversed, and the jury verdict set aside. In light of the judgments entered in 2005, 2008, and 2010, on subsequent petitions for discharge filed by the petitioner, he is not entitled to an order of discharge at this time.

*So ordered.*

---

[13]In asserting that his continued commitment is fundamentally unjust and "in violation of ordered liberty," the petitioner claims that his appeal took an unconscionable amount of time to reach the appellate courts for decision, and that he would have been better off if he had not exercised his right to bring petitions for discharge while his appeal from the judgment in the 2002 discharge proceeding was pending. That there were delays in the appeal of this case is obvious and unfortunate, although some portion of the delay appears to have been due to the fact that the petitioner, as he was entitled to do, moved for a new trial in January of 2007. It is true that if we were now deciding this direct appeal from the petitioner's 2002 discharge proceeding with no discharge proceedings having been tried in the interim, he would be entitled to an order of discharge. But *Johnstone* was decided in 2009, and if the petitioner's direct appeal had proceeded at a speedier rate, it is not clear that the issue decided in *Johnstone* would have been raised; the petitioner himself did not raise such a claim until July, 2007, in an amended memorandum in support for his motion for a new trial. Moreover, the petitioner did, in fact, exercise his right to petition for discharge, and in three separate trials in 2005, 2008, and 2010, he was found to remain sexually dangerous.