NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13748

EDWARD PIERCE, petitioner.


Plymouth.     October 10, 2025. - February 9, 2026.

Present:  Budd, C.J., Kafker, Wendlandt, Georges,
& Wolohojian, JJ.


Habeas Corpus.  Practice, Civil, Civil commitment, Sex offender,
    Appeal, Dismissal of appeal.  Sex Offender.  Evidence,
    Opinion, Sex offender.



    Petition for a writ of habeas corpus filed in the Superior
Court Department on February 16, 2023.

    The case was heard by Michael A. Cahillane, J.

    After review by the Appeals Court, 105 Mass. App. Ct. 156
(2025), the Supreme Judicial Court granted leave to obtain
further appellate review.


    Mary P. Murray for the respondent.
    Joseph M. Kenneally for the petitioner.
    Joseph N. Schneiderman, for Committee for Public Counsel
Services, amicus curiae, submitted a brief.


    WENDLANDT, J.  In Johnstone, petitioner, 453 Mass. 544, 553

(2009), we determined that G. L. c. 123A, the statute governing

the civil commitment of a sexually dangerous person (SDP),

requires at least one qualified examiner to opine that the person is an SDP given the central role of qualified examiners in the statutory scheme. If no qualified examiner so opines, the Commonwealth cannot meet its burden of proof, and the individual is entitled to a directed verdict or required finding of not sexually dangerous.

This case presents the question whether a writ of habeas corpus provided an available remedy to the petitioner, Edward Pierce, who challenged his civil commitment under G. L. c. 123A on the ground that no qualified examiner opined that he was an SDP. We first conclude that the appeal from the grant of the writ is properly before us. We next conclude, as did the Superior Court judge, that Pierce is entitled to some form of relief; where neither of the qualified examiners appointed to evaluate him opined that he was an SDP, he was entitled to a required finding of not sexually dangerous under the statutory scheme. See McIntire, petitioner, 458 Mass. 257, 262 (2010), cert. denied, 563 U.S. 1012 (2011) (Johnstone error generally requires relief from judgment). Further concluding that the circumstances presented do not support the extraordinary writ of habeas corpus because Pierce had an alternative avenue to challenge his civil commitment, we vacate the order granting habeas corpus relief and remand to the Superior Court with

direction to treat Pierce's petition as a motion for relief from judgment, which in the circumstances here must be allowed.[1]

1. Background. In 1997, a jury convicted Pierce of indecent assault and battery on a child under fourteen, his nephew. Pierce was sentenced to two years and six months of incarceration. In October 1999, the prosecuting district attorney's office timely filed a petition pursuant to G. L. c. 123A, § 12 (b), to civilly commit Pierce as an SDP[2] upon the expiration of his period of incarceration.[3] The petition alleged

---

[1] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services.

[2] An SDP is defined, in relevant part, as

"any person who has been . . . previously adjudicated [of a sexual offense, including indecent assault and battery on a child under fourteen] by a court of the [C]ommonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of [sixteen] years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

G. L. c. 123A, § 1.

[3] For a thorough review of the SDP commitment process, which must be commenced before a person is released from incarceration on the underlying sexual offense, see Commonwealth v. Nieves, 446 Mass. 583, 585-587 (2006). See also G. L. c. 123A, § 12 (a), (b) (setting forth requisite notice to, inter alia, district attorney of impending release of person convicted of qualifying sexual offense at least six months prior to release

that Pierce was likely to reoffend if not confined to a secure facility because, inter alia, he had sexually assaulted several boys in addition to his nephew. At the time the petition was filed, the district attorney had not charged Pierce for the offenses against the other boys.

In August 2001, a Superior Court judge found probable cause to believe Pierce was an SDP and ordered that he be committed temporarily to the Massachusetts Treatment Center (treatment center) to be examined[4] by two qualified examiners.[5] Based on their misunderstanding that they could not consider uncharged allegations of sexual assault, both qualified examiners opined

---

and procedure for district attorney to file civil commitment petition).

[4] See G. L. c. 123A, §§ 12 (c) (requirement that judge find probable cause that person named in petition for civil commitment is SDP), 13 (authorizing examination at treatment center for sixty-day period).

[5] A "qualified examiner" is

"a physician who is licensed pursuant to [G. L. c. 112, § 2,] who is either certified in psychiatry by the American Board of Psychiatry and Neurology or eligible to be so certified, or a psychologist who is licensed pursuant to [G. L. c. 112, §§ 118 to 129]; provided, however, that the examiner has had two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by the commissioner of correction."

G. L. c. 123A, § 1.

that Pierce did not meet the statutory criteria for classification as an SDP.[6]

In 2001, presaging our decision in Johnstone, 453 Mass. at 553, where we determined that, under the statutory scheme set forth in G. L. c. 123A, unless a qualified examiner opines that the person is an SDP, the person alleged to be an SDP is entitled to a directed verdict or required finding of not sexually dangerous, Pierce filed a motion for summary judgment, arguing, inter alia, that because both qualified examiners opined that he was not an SDP, a reasonable fact finder could not find beyond a reasonable doubt that he met the criteria to be civilly committed. A different Superior Court judge (second judge) denied the motion, concluding that a fact finder could reject the opinions of the two qualified examiners and instead

---

[6] After a Superior Court judge denied Pierce's motion for summary judgment, see discussion infra, but approximately three months before Pierce's trial, we clarified that qualified examiners in SDP proceedings may consider uncharged sexual offenses so long as the allegations are "independently admissible and are a permissible basis for an expert to consider in formulating an opinion" (citation omitted). Commonwealth v. Markvart, 437 Mass. 331, 336-337 (2002). Apparently, the qualified examiners were not asked to reconsider their opinions in light of Markvart even though one of them had stated that he would have opined that Pierce was an SDP if he could have considered the uncharged conduct, explaining that together with the sexual offense for which Pierce was incarcerated, the uncharged conduct showed that he was "clearly a repetitive and compulsive sexual offender who suffer[ed] from a mental abnormality; that is, Pedophilia, the recurrent and intense sexual arousal to children."

rely on the opinion of the Commonwealth's expert, who opined that Pierce was an SDP.[7]

Following a jury-waived trial in October 2002 during which the Commonwealth presented the testimony of three victims who stated that Pierce had sexually assaulted them when they were minors, evidence of the 1997 conviction for the sexual assault against Pierce's nephew, and its expert's opinion that Pierce was an SDP,[8] another Superior Court judge (third judge) concluded that Pierce was an SDP and ordered him to be civilly committed to the treatment center for an indeterminate period of from one day to life (2002 commitment order).[9]  Pierce then fled the Commonwealth and lived as a fugitive for over two years.

In June 2005, authorities apprehended Pierce in Vermont and brought him to the treatment center.  In July 2005, Pierce filed a notice of appeal from the 2002 commitment order, which was dismissed as untimely.  Pierce did not appeal from the dismissal.

---

[7] The second judge did not have the benefit of our decision in Johnstone, 453 Mass. at 553.

[8] The expert was not a qualified examiner.  As discussed supra, neither of the two designated qualified examiners opined that Pierce was an SDP.

[9] See G. L. c. 123A, § 14 (d) (establishing burden of proof at trial and commitment for "an indeterminate period of a minimum of one day and a maximum of such person's natural life").

In September 2007, Pierce filed a petition for discharge pursuant to G. L. c. 123A, § 9.[10]  After at least one qualified examiner opined that Pierce was an SDP, Pierce withdrew his petition for discharge.[11]  Pierce subsequently filed four discharge petitions -- in 2011, 2014, 2017, and 2019 -- and withdrew each of them before trial.

Meanwhile, between 2006 and 2008, Pierce was convicted of, inter alia, indecent assault and battery on a person fourteen or older in violation of G. L. c. 265, § 13H, and statutory rape of a child in violation of G. L. c. 265, § 23, based on sexual offenses disclosed at Pierce's 2002 SDP trial.  Pierce was sentenced to an aggregate of from twelve to eighteen years in prison, with ten years of probation to be served upon release. In September 2022, Pierce completed the committed portion of his criminal sentence; thereafter, he continued to be held pursuant to the 2002 commitment order.

In February 2023, Pierce filed a petition for a writ of habeas corpus, which is the subject of the present appeal.  In

---

[10] A person committed under the statute is "entitled to file a petition for examination and discharge once in every twelve months."  G. L. c. 123A, § 9.  Upon the filing of such a petition, the petitioner is assessed for continuing sexual dangerousness by two qualified examiners.  Id.

[11] Before Pierce's motion to withdraw was allowed, both qualified examiners appointed to examine him in anticipation of his discharge trial had submitted opinions that he was an SDP.

his petition, Pierce argued, as he had in his motion for summary judgment, that the 2002 commitment order was unlawful because neither qualified examiner opined that he was an SDP, this time relying on Johnstone, 453 Mass. at 553.  The respondent, the superintendent of the treatment center, opposed the petition, arguing that Pierce was not entitled to a writ of habeas corpus because he could have challenged the 2002 commitment order by (1) direct appeal, (2) a motion for a new trial, or (3) a declaratory judgment action.  A Superior Court judge granted Pierce's petition for a writ of habeas corpus, concluding (1) that our decision in Johnstone was rooted in the constitutional principle of due process, (2) that, as a result, Pierce was being held pursuant to an "unconstitutional commitment order" because neither qualified examiner concluded that he was an SDP, and (3) relying on the clairvoyance exception to the waiver doctrine, that a writ of habeas corpus was available as a remedy because Johnstone was issued after the time for Pierce to appeal had lapsed.  The judge temporarily stayed the discharge order.

The respondent appealed and filed a motion for a stay of the petitioner's release in the Appeals Court.  A single justice of the Appeals Court denied the motion, and in September 2023, Pierce was released from the treatment center subject to the conditions of probation associated with his 2008 sentence for

indecent assault and battery on a person fourteen or older.  The

conditions, which are set to expire in 2032, include, inter

alia, global positioning system (GPS) monitoring[12] and weekly sex

offender treatment.[13]

Before oral argument on the respondent's appeal, the

Appeals Court asked the parties to address the additional

question whether an order granting habeas corpus relief is

appealable.  Pierce, petitioner, 105 Mass. App. Ct. 156, 157

(2025).  Pierce subsequently filed a motion to dismiss the

respondent's appeal, arguing that the Appeals Court lacked

jurisdiction to consider an appeal from the issuance of a writ

of habeas corpus.  In a thorough, well-reasoned opinion, the

Appeals Court reversed the order granting a writ of habeas

corpus and denied Pierce's motion to dismiss, concluding that

(1) habeas corpus was not an available remedy where, as here,

the petitioner had alternative remedies, including a direct

---

[12] On the record before us it appears that Pierce is subject to GPS monitoring as a condition of probation without a designated exclusion zone or curfew.  Cf. Commonwealth v. Rodriguez, 494 Mass. 723, 725 (2024) (upholding GPS monitoring as probationary condition because "the Commonwealth had strong interests in the protection of the public through enforcement of exclusion zones and in the deterrence and investigation of future crimes").

[13] In a January 2025 letter, the probation officer supervising Pierce reported that he has been in full compliance with the conditions of his probation since his release in 2023. Nothing in the record indicates that Pierce has since violated any terms of his probation.

appeal and a motion for relief from the judgment of commitment and (2) the respondent's appeal was permissible.  Id. at 163-173.  We granted Pierce's application for further appellate review.

2.  Discussion.  a.  Standard of review.  The issues on appeal are questions of law, which we review de novo.  See Robinhood Fin. LLC v. Secretary of the Commonwealth, 492 Mass. 696, 707 (2023).  See, e.g., Averett, petitioner, 404 Mass. 28, 29-32 (1989) (reviewing de novo whether writ of habeas corpus provided available remedy to petitioner after Superior Court judge granted writ).

b.  Habeas corpus.  The writ of habeas corpus, deemed "the most celebrated writ in the English law," dates at least from the Magna Carta of 1215.  3 W. Blackstone, Commentaries *129, *133.  See Sheriff of Suffolk County v. Pires, 438 Mass. 96, 97-98 (2002) (discussing historical origins of "'The Great Writ,' habeas corpus").  See generally J.F. Stanton, Appellate Practice and Procedure § 23:48 (4th ed. 2020) (describing writ of habeas corpus as "one of the bedrock principles of Anglo-Saxon law" and reviewing its early codification in Massachusetts law).  "The great purpose of the writ of habeas corpus is the immediate delivery of the party deprived of personal liberty."  Wyeth v. Richardson, 10 Gray 240, 241 (1857).  See 3 W. Blackstone,

Commentaries *137 (noting that writ of habeas corpus is remedy for "removing the injury of unjust and illegal confinement").

The right to seek a writ of habeas corpus is guaranteed in Part II, c. 6, art. 7, of the Constitution of the Commonwealth, which states:

> "The privilege and benefit of the writ of habeas corpus shall be enjoyed in this commonwealth in the most free, easy, cheap, expeditious and ample manner; and shall not be suspended by the legislature, except upon the most urgent and pressing occasions, and for a limited time not exceeding twelve months."

The Legislature codified the right to seek a writ of habeas corpus, permitting an individual to petition for the writ either as of right, G. L. c. 248, § 1,[14] or at the discretion of the court, G. L. c. 248, § 25.[15]

---

[14] General Laws c. 248, § 1, provides, in relevant part:

> "Whoever is imprisoned or restrained of his liberty may, as of right and of course, prosecute a writ of habeas corpus, according to this chapter, to obtain release from such imprisonment or restraint, if it proves to be unlawful, unless . . . [h]e has been convicted or is in execution upon legal process, civil or criminal."

[15] General Laws c. 248, § 25, provides, in relevant part:

> "This chapter shall not affect the power of the supreme judicial court, or the superior court, or a justice thereof, to issue a writ of habeas corpus in its discretion . . . to discharge [a petitioner] as law and justice require. The court shall have no power to issue a writ of habeas corpus, at its discretion for . . . a person who is imprisoned or restrained of his liberty pursuant to a criminal conviction."

c. _Appeal from allowance of a writ of habeas corpus_. As a preliminary matter, Pierce contends that the Superior Court judge's decision granting the writ is unappealable; according to Pierce, even if the writ of habeas corpus was granted in error, we lack appellate jurisdiction to review it. He maintains that dismissal of the appeal is required under this court's decision in _Wyeth_, 10 Gray at 241, where we determined that "exceptions do not lie" from a judgment allowing a writ of habeas corpus (_Wyeth_ rule).[16] There, we reasoned that because "[t]he great purpose of the writ of habeas corpus is the immediate delivery of the party deprived of personal liberty," permitting an appeal "would be wholly inconsistent with the purpose of the writ." _Id_.

We have reaffirmed this general principle repeatedly. See, e.g., _Pires_, 438 Mass. at 101 ("Commonwealth has no right to seek appellate review if the writ is granted"); _Averett_, 404 Mass. at 32 (referencing "longstanding rule in the Commonwealth

---

[16] Historical bills of exceptions and writs of error have been superseded by the rules of appellate procedure. See Reporter's Notes (1979) to Rule 1 (a), Mass. Ann. Laws Court Rules, Rules of Appellate Procedure, at 689 (LexisNexis 2024) ("Bills of exceptions [former G. L. c. 278, § 31], writs of error [former G. L. c. 250, §§ 1-2, 9-13], and the limited 'appeal' from a judgment of the Superior Court based on a 'matter of law apparent upon the record' [former G. L. c. 278, § 28,] are superseded by an appeal under these rules . . ."). See also Mass. R. A. P. 1 (c), as amended, 487 Mass. 1601 (2019) (defining "appeal").

. . . that appeal does not lie from an issuance of a writ of

habeas corpus"); Stokes v. Superintendent, Mass. Correctional

Inst., Walpole, 389 Mass. 883, 885 (1983) (citing Wyeth for

"long standing rule of the Commonwealth . . . that exceptions do

not lie from an issuance of the writ of habeas corpus" [citation

omitted]); Hennessy v. Superintendent, Mass. Correctional Inst.,

Framingham, 386 Mass. 848, 850 (1982) (declining to abandon

Wyeth rule that "an appeal does not lie from the issuance of the

writ"); Pina v. Superintendent, Mass. Correctional Inst.,

Walpole, 376 Mass. 659, 664 (1978) ("The long standing rule of

the Commonwealth is that exceptions do not lie from an issuance

of the writ of habeas corpus").[17]

---

[17] As the Appeals Court more fulsomely examined, Pierce, 105
Mass. App. Ct. at 168-170, our case law demonstrates that this
general principle has not been honored absolutely. See, e.g.,
Newton, petitioner, 357 Mass. 346, 353 (1970) (examining merits
of Superior Court judge's allowance of writ of habeas corpus and
ordering petition dismissed without discussing propriety of
appeal); King's Case, 161 Mass. 46, 48, 50 (1894) (noting that
in Wyeth "it was decided that exceptions do not lie to the
discharge of a prisoner on habeas corpus by a single judge," but
later stating that "[w]hether at a hearing on habeas corpus
before a single justice sitting as a court exceptions can be
taken to any ruling on any question of law, or an appeal can be
taken from any judgment upon matters of law apparent on the
record, has not been decided"); Sanborn v. Carleton, 15 Gray
399, 400 (1860) (allowing respondent to appeal from issuance of
writ of habeas corpus). As discussed infra, this case does not
present occasion to consider, as the respondent urges us to do,
the question whether to abandon the Wyeth rule. Instead, the
appeal in this case is proper under the settled principle that
an appeal will lie from the grant of the writ to address the

While doing so, we have differentiated between an appeal from the grant of a writ of habeas corpus to examine the underlying merits of a petition, which the Wyeth rule generally would prohibit, and an appeal to determine the threshold question whether the judge had the discretion to grant the writ in the first instance. An appeal to consider the latter inquiry is permissible despite the Wyeth rule.

Thus, in Pires, 438 Mass. at 96, we permitted appellate review of the grant of the writ of habeas corpus to a defendant who challenged an order revoking his bail[18] to address the antecedent question whether a writ of habeas corpus was a proper means of appealing from a bail revocation proceeding. We concluded that it was not, in view of two limitations on a judge's discretion to issue the writ. Id. at 99-101. First, a writ of habeas corpus generally is not a substitute for an appeal. Id. at 99-100, quoting O'Leary, petitioner, 325 Mass.

threshold question whether a judge had any discretion to allow the writ at all.

[18] In Pires, 438 Mass. at 97, the defendant's bail had been revoked in the District Court following a hearing where he was not allowed to present witnesses. The defendant filed a petition for a writ of habeas corpus in the Superior Court. Id. The Superior Court judge reversed the bail revocation and further ordered, in the alternative, that if the judge did not have the authority to reverse the bail revocation, the order was to "be deemed a conditional writ of habeas corpus." Id. The sheriff of Suffolk County petitioned for review of the allowance to a single justice of this court pursuant to G. L. c. 211, § 3. Id. at 96.

179, 184 (1950) ("habeas corpus 'cannot take the place of a writ of error in a case which was within the jurisdiction of the court, and where the only question raised is the correctness of the rulings of the court'").  Second, the writ "is available only where granting the writ would result in the petitioner's immediate release from custody."  Pires, supra at 100.  Because the petitioner's contention was not that the law failed to authorize bail revocation and detention or that he was held beyond the period authorized, but instead was a challenge to the adequacy of the evidence and process used in committing him under the law, his petition failed to overcome the first limitation.  Id. at 100.  Instead, the petitioner's challenge could be raised pursuant to G. L. c. 211, § 3.  Id. at 100-101.

In examining the threshold question whether the judge had discretion to grant the writ, we explained that adherence to the limitations on the court's discretion to grant the writ was particularly important "where [under the Wyeth rule] the Commonwealth has no right to seek appellate review if the writ is granted."  Id. at 101.  In short, we differentiated between an appeal to consider the threshold inquiry whether a writ of habeas corpus was available, which was permitted, and an appeal to consider the merits of the grant of the writ, which was not.  See Averett, 404 Mass. at 29-32 (permitting appeal of threshold question whether writ of habeas corpus was available to

petitioner, concluding that it was, and declining to address respondent's objections to merits of habeas petition pursuant to Wyeth rule).

Similarly, in Stokes, Hennessy, and Pina, this court allowed the respondent to appeal from a grant of a writ of habeas corpus to consider the threshold question whether the writ was available as a remedy.  See Stokes, 389 Mass. at 883, 885-886; Hennessy, 386 Mass. at 850-852; Pina, 376 Mass. at 660, 664-666.  In each case, we concluded the writ was not available as a remedy because even if the petitioners were correct on the merits of their argument -- that the respondents miscalculated their earned good time credits or failed to timely provide a status review hearing -- they were not entitled to immediate release from the respondents' custody.[19]  See Stokes, supra at 886; Hennessy, supra at 851-852; Pina, supra at 665-666.  See also Stewart, petitioner, 411 Mass. 566, 569 (1992) ("a petition

---

[19] A party seeking appellate review on the threshold question of the availability of the writ may either file a petition pursuant to G. L. c. 211, § 3, see Pires, 438 Mass. at 96 (reviewing threshold question of availability of writ of habeas corpus after respondent filed petition pursuant to G. L. c. 211, § 3), or appeal in the ordinary course, see Averett, 404 Mass. at 28-29 (reviewing threshold question after Superior Court judge issued writs of habeas corpus and Appeals Court vacated judgments).  See also G. L. c. 231, § 113 ("A party aggrieved by a final judgment of the superior court . . . may appeal therefrom to the appeals court or, subject to the provisions of [G. L. c. 211A, § 10], to the full court of the supreme judicial court").

for habeas corpus relief does not lie" where petitioner is not entitled to immediate release, even if petitioner would prevail on substantive merits of his claims). The respondent's appeal is thus proper.[20]

d. Availability of the writ. Pierce next contends that a writ of habeas corpus was available to him as a remedy to cure the Johnstone error. We disagree. Because of its extraordinary nature, and because of society's countervailing interest in finality, a court's discretion to grant a writ of habeas corpus has long been circumscribed. See generally 39 Am. Jur. 2d, Habeas Corpus § 5 (2019) ("Habeas corpus furnishes an extraordinary, limited remedy against a presumptively fair and valid final judgment").

> "In general, [a judge evaluating a petition for a writ of habeas corpus has no discretion] . . . to inquire into the merits of a judgment under which a party is committed; otherwise this very summary proceeding, regarded as so important to the security of personal liberty, would come

---

[20] Allowing an appeal to address the threshold question need not result in undue delay. See Part II, c. 6, art. 7, of the Constitution of the Commonwealth ("The privilege and benefit of the writ of habeas corpus shall be enjoyed in this commonwealth in the most free, easy, cheap, expeditious and ample manner . . ."). For example, delays can be minimized by expediting appellate proceedings. See, e.g., Mass. R. A. P. 23 (b), (c), as appearing in 481 Mass. 1653 (2019) (allowing for expedited issuance of rescript); LeSage, petitioner, 488 Mass. 175, 177 (2021) (in discharge proceeding pursuant to G. L. c. 123A, § 9, single justice granted Commonwealth leave to file interlocutory appeal on jury trial issue and ordered expedited appeal).

> to be regarded as a mere general appeal or writ of error
> . . . ."[21]

Clarke's Case, 12 Cush. 320, 321 (1853).  See Fleming v. Clark,

12 Allen 191, 200 (1866) ("we see no reason for interfering in

this extraordinary manner, by writ of habeas corpus, to

discharge a person committed under a judgment of a court of

competent jurisdiction"); 3 W. Blackstone, Commentaries *132

(writ of habeas corpus requires showing of "some probable cause

why the extraordinary power of the crown is called in" to issue

it).  See also Crowley, petitioner, 54 Mass. App. Ct. 447, 451

(2002) ("In both its statutory and constitutional derivations,

the right to habeas corpus is limited in nature").  Adherence to

the limitations to the availability of the writ is important

because of its extraordinary nature:  the allowance of the writ

entitles the petitioner to immediate release, and under the

Wyeth rule, the Commonwealth generally lacks a right to appeal

the merits of its allowance.  See Pires, 438 Mass. at 101.  But

see note 17, supra.

Accordingly, a writ of habeas corpus is not a substitute

for the ordinary appellate process.  See Pires, 438 Mass. at 99,

quoting Crowell v. Commonwealth, 352 Mass. 288, 289 (1967) (writ

of habeas corpus generally "cannot be employed as a substitute

---

[21] Writs of error have been superseded by the rules of
appellate procedure.  See note 16, supra.

for ordinary appellate procedure").  A judge considering a petition for a writ of habeas corpus generally lacks discretion to grant such relief based on errors that could have been raised in a direct appeal.  See Pires, supra at 100-102 (vacating grant of writ of habeas corpus as beyond judge's discretion where, inter alia, petitioner did not challenge authority to revoke bail and instead sought review of merits of underlying judgment revoking bail; petitioner's remedy was through prescribed appellate process).  See also Crystal, petitioner, 330 Mass. 583, 590-591 (1953) (noting "settled" law that writ of habeas corpus is generally not available "where there is a remedy by writ of error or appeal," but permitting remedy by habeas corpus because order of contempt was "wholly void and not merely voidable, and the person imprisoned is entitled to be discharged without first seeking to reverse the void order"); O'Leary, 325 Mass. at 184 (stating general rule that habeas corpus "cannot take the place of a writ of error in a case which was within the jurisdiction of the court, and where the only question raised is the correctness of the rulings of the court," but permitting habeas corpus relief where petitioner had no avenue to pursue direct appeal and was held "without due process of law"); Kelley, petitioner, 292 Mass. 198, 199-200 (1935) ("A writ of habeas corpus cannot be invoked to perform the purposes of a writ of error"); Connors, petitioner, 254 Mass. 103, 105 (1925)

("If the court proceeded erroneously or irregularly [in incarcerating petitioner for fraudulent transfer of funds], the remedy is by writ of error, and not by habeas corpus"); Flito's Case, 210 Mass. 33, 35 (1911) ("The writ of habeas corpus is not to take the place of an appeal, a bill of exceptions, or a writ of error, in a case like this . . . in which the only question raised is as to the correctness of the rulings made" by trial judge); Gorman's Case, 124 Mass. 190, 193 (1878) ("Where, as here, the court rendering the judgment had jurisdiction, the regularity of its proceedings will not be inquired into collaterally [on habeas corpus], and its judgment stands good until reversed or annulled by a proper course of proceedings for the purpose"); Adams v. Vose, 1 Gray 51, 55-56 (1854) (where court of competent jurisdiction issues "erroneous" judgment, "[it] stands good until reversed by due proceedings, instituted for that purpose in some higher court, and is not to be examined collaterally, as it would be in a proceeding on a writ of habeas corpus").[22]

---

[22] Pierce relies on three cases in support of his contention that the writ of habeas corpus is an available alternative to the ordinary appellate process. In each case, however, we denied habeas corpus relief without discussing whether the writ was the proper vehicle for asserting the claimed errors. See Drayton v. Commonwealth, 450 Mass. 1021 (2008); Andrews, petitioner, 368 Mass. 468 (1975); LaMorre v. Superintendent of Bridgewater State Hosp., 347 Mass. 534 (1964).

Pierce nonetheless contends that a writ of habeas corpus was available to him because he was denied the opportunity to raise the Johnstone error on appeal; in 2005, he sought a direct appeal from his 2002 commitment judgment after he was apprehended, but the appeal was dismissed as untimely. In other words, Pierce contends that while a writ of habeas corpus generally is not available to one who fails to appeal altogether, it is available here because he tried to pursue an appeal but did so untimely. We disagree that this extraordinary remedy is available in such a circumstance; instead, the writ of habeas corpus generally is not a tool for a second appeal whenever an incarcerated person fails to appeal, or where, as here, fails to appeal timely. See Kauffman, petitioner, 413 Mass. 1010, 1011 (1992) ("petitions for writs of habeas corpus may not be used to raise issues that should have been raised on appeal" [emphasis added]); Dirring, petitioner, 344 Mass. 522, 523 (1962) (concluding that writ of habeas corpus was unavailable to petitioner who could have but failed to raise suppression issue by "appropriate appellate procedure"); Crystal, 330 Mass. at 590-591 (concluding that writ of habeas corpus was available even though petitioner "could have appealed from the contempt decree" because of "exception" to general rule that habeas is not substitute for "ordinary appellate procedure" where order is void, and not merely voidable [emphasis added]);

Adams, 1 Gray at 56-57 (concluding that errors raised on appeal regarding sufficiency of evidence before trial judge were "not open . . . for revision upon a habeas corpus," where judge had jurisdiction over cause and petitioner did not appeal from judgment).

Pierce also presses the argument that the Superior Court judge properly issued the writ because the error in his 2002 trial was not announced until this court's 2009 decision in Johnstone and thus fell within the "clairvoyance exception" to the waiver doctrine in criminal appeals. See Commonwealth v. Randolph, 438 Mass. 290, 295 (2002), quoting Commonwealth v. Rembiszewski, 391 Mass. 123, 126 (1984) (clairvoyance exception "applies to errors of a constitutional dimension 'when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise his claim at those junctures of the case'").

Pierce's argument misconstrues Johnstone. The requirement that the Commonwealth present an opinion from at least one qualified examiner that the individual is an SDP is "based on the integral role of the qualified examiners in the entire

statutory scheme," not constitutional due process.[23]  Johnstone,
453 Mass. at 553.  See Chapman, petitioner, 482 Mass. 293, 306
(2019) (declining to overturn Johnstone in part because "stare
decisis is particularly weighty where, as here, the Legislature
has declined to exercise its authority to overturn the court's
interpretation of a statute" [emphasis added; quotations and
citation omitted]); McIntire, 458 Mass. at 261 (noting that
Johnstone was not decision of constitutional dimension, but
rather "purely one of statutory interpretation").  Due process
requires that a civil commitment order be supported by expert
testimony that the individual named in the commitment petition
is an SDP.  See Commonwealth v. Bruno, 432 Mass. 489, 511 (2000)
("Whether a person suffers from a mental abnormality or
personality defect, as well as the predictive behavioral
question of the likelihood that a person suffering from such a
condition will commit a sexual offense, are matters beyond the
range of ordinary experience and require expert testimony").

---

[23] Pierce's reliance on Green, petitioner, 475 Mass. 624,
629-630 (2016), is misplaced.  To be sure, in Green, we stated
that "[t]he thrust of Johnstone is that because a person may be
involuntarily and indefinitely committed as an SDP, due process
and G. L. c. 123A require proof of sexual dangerousness beyond a
reasonable doubt based on expert testimony from a designated
qualified examiner" (emphasis added).  Id.  Later in that
opinion, however, we clarified that Johnstone regarded the
"gatekeeper" role played by qualified examiners in the
"statutory scheme," not a separate requirement grounded in
substantive due process.  Id. at 630, quoting Johnstone, 453
Mass. at 552.

Due process, however, does not dictate that such expert opinion be given by a qualified examiner.[24]  Accordingly, assuming, arguendo, that the clairvoyance exception applies to civil commitment orders, it does not extend to the statutory error in this case.

To be sure, as the Superior Court judge recognized, the Johnstone error means that Pierce's civil commitment was not permitted under the governing statutory scheme; however, as discussed infra, Pierce has an alternative avenue for relief. As such, the circumstances of this case do not present an exceptional circumstance where the writ of habeas corpus may issue despite the general rule that habeas corpus relief is not available to a petitioner who raised or could have raised the issue on direct appeal.  See 39 C.J.S. Habeas Corpus § 28 (2025) ("The fact that the petitioner has permitted the time to elapse within which an appeal may be taken does not give the petitioner the right to resort to habeas corpus . . . .  However, this rule is not an inflexible one, and in exceptional cases, the writ may issue after the time for an appeal has elapsed, but only in the discretion of the court and not as a matter of right" [footnotes omitted]).  Contrast Crystal, 330 Mass. at 588-589, 591

_____

[24] Because the Commonwealth presented expert testimony from a forensic psychologist that Pierce was an SDP at his 2002 commitment trial, Pierce was not deprived of due process.

(allowing writ of habeas corpus even though petitioner had "remedy by [direct] appeal" because of extraordinary circumstances presented in petition challenging jurisdiction of court to issue commitment order and lack of due process in holding petitioner in contempt).

e. <u>Motion for relief from judgment</u>. In particular, Pierce can raise the <u>Johnstone</u> error by a motion for relief from judgment.[25] Our decision in <u>McIntire</u>, 458 Mass. at 258-262, is instructive. There, the petitioner filed a motion for a new trial five years after he received an adverse judgment in a discharge proceeding pursuant to G. L. c. 123A, § 9. <u>Id</u>. at 259-260. He challenged the judgment on the ground that both qualified examiners opined that he was not an SDP, and only a licensed psychologist, a professional who was not one of the two statutorily appointed qualified examiners, opined that he was an SDP. <u>Id</u>. We concluded that reversal of the judgment was required because petitioner's trial did not comply with the

---

[25] Contrary to the respondent's contention, "[a] discharge petition under G. L. c. 123A, § 9, is not the appropriate means to challenge the validity of the original commitment," as "[t]he sole issue at the § 9 hearing is whether the petitioner, having previously been committed, remains sexually dangerous." <u>McHoul, petitioner</u>, 445 Mass. 143, 157-158 (2005), cert. denied, 547 U.S. 1114 (2006).

requirements of G. L. c. 123A, as set forth in Johnstone.[26]  Id. at 260-262.

Like the petitioner in McIntire, Pierce also raised a Johnstone error years after the judgment entered.  Pierce is similarly entitled to relief.[27,28]

---

[26] Although in McIntire we reversed a judgment finding the petitioner to be an SDP on Johnstone grounds, we nevertheless concluded that the petitioner was not entitled to be discharged because, while his appeal was pending, the petitioner was adjudged an SDP in three other discharge proceedings supported by qualified examiner opinions.  McIntire, 458 Mass. at 263-266. Here, there have been no intervening judgments supported by a qualified examiner opinion that Pierce is an SDP.  Relevant to the present circumstances, in McIntire we observed, "It is true that if we were now deciding this direct appeal from the petitioner's 2002 discharge proceeding with no discharge proceedings having been tried in the interim, he would be entitled to an order of discharge."  Id. at 267 n.13.

[27] Because the statutory scheme for civil commitment precludes the Commonwealth from proceeding to trial where, as here, the qualified examiners did not opine that Pierce was an SDP, the petitioner's 2002 commitment order must be reversed. See Johnstone, 453 Mass. at 552 ("if both qualified examiners determine that a person is not sexually dangerous, the Commonwealth cannot meet its burden of proof"); 2 M.G. Perlin & D. Cooper, Massachusetts Proof of Cases § 68:13 (2025-2026 ed.) ("The general rule is that where the party having the burden of proof upon a case or decisive issue fails to put on evidence which, even if believed, is sufficient as matter of law to sustain the case or issue, the opposing party is entitled as matter of law to a directed verdict in jury cases, or to a finding as matter of law in non-jury cases" [footnote omitted]).

[28] Although the Massachusetts Rules of Civil Procedure do not govern "proceedings pertaining to the adjudication, commitment and release of sexually dangerous persons," Mass. R. Civ. P. 81 (a) (1), as amended, 481 Mass. 1401 (2018), "[i]n respects not governed by statute . . . the practice in civil proceedings to which [the rules of civil procedure] do not apply

3.  <u>Conclusion</u>.  The order granting the petitioner a writ of habeas corpus is vacated.  We remand the matter to the Superior Court to treat the petition for a writ of habeas corpus as a motion for relief from the 2002 commitment order, which must be allowed.

<u>So ordered</u>.

---

shall follow the course of the common law, as near to these rules as may be," Mass. R. Civ. P. 81 (a) (3), as amended, 481 Mass. 1401 (2018).  Rule 60 (b) (5) permits relief on the ground that "it is no longer equitable that the judgment should have prospective application", and rule 60 (b) (6) provides for relief based on "any other reason justifying relief from the operation of the judgment."  See Mass. R. Civ. P. 60, 365 Mass. 828 (1974).  See also <u>Marsch</u> v. <u>Southern New England R.R.</u>, 235 Mass. 304, 305 (1920) ("A final judgment may be set aside on an appeal seasonably taken for the correction of errors of law apparent on the face of the record, or by a petition to vacate a judgment, or by a writ of review . . . or by a writ of error, if there are grounds for any of these proceedings" [citation omitted]).